Kenneth GUMBS and Yvonne Gumbs, Appellees,

v.

INTERNATIONAL HARVESTER, INC., Appellant.

No. 82–3341.

United States Court of Appeals, Third Circuit.

Argued April 25, 1983.
Decided Sept. 30, 1983.

Richard H. Hunter (argued), Isherwood Hunter & Colianni, Christiansted, St. Croix, U.S.V.I., for appellant.

Desmond L. Maynard, St. Thomas, V.I., for appellees.

Before GIBBONS, SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal in a Virgin Islands products liability case requires us to determine the quantum of evidence necessary to make out a case of breach of implied warranty of fitness for a particular purpose under U.C.C. § 2–315, V.I.Code Ann. tit. 11A, § 2–315 (1965). Because under this cause of action a buyer must prove that he actually relied on the seller's skill or judgment in selecting the goods in question, and because at trial the plaintiff presented no such evidence, we must set aside a verdict grounded on section 2–315. The appeal also requires us to explore the relationship between the elements of liability under Restatement (Second) of Torts § 402A (strict products liability) and section 2–314 of the Uniform Commercial Code, V.I.Code Ann. tit. 11A, § 2–314 (1965) (breach of seller's implied warranty of merchantability). Because we conclude that the requisites for liability under sections 402A and 2–314 are, under the facts of this case, coextensive, we therefore set aside as irreconcilably inconsistent, the jury's findings that a truck chassis manufactured and sold by defendant, International Harvester ("Harvester") was not defective and unreasonably dangerous, but that the sale breached Harvester's implied warranty of merchantability. To provide guidance for the district court on retrial, we also consider a number of evidentiary issues presented by the record.

### I. Facts and Procedural History

Plaintiff Kenneth Gumbs, a truck driver, was employed by Tri-Island Enterprises, Inc. of St. Thomas to deliver water on the island of St. Thomas in an International Harvester Series 1800 truck on which was mounted a tank capable of holding 2700 gallons of water. On February 9, 1978, at about 4:00 a.m., plaintiff was driving the truck loaded to a gross weight of 33,000 pounds. He came to Cassi Hill (a 10% grade), shifted down into gear at the top of the hill, and began his descent. Plaintiff testified at trial that he heard a clanging sound, and that the truck began to gain speed. He applied the brakes to no avail and could not control the steering. At the first turn, a switchback, the truck hit the guardrail, went off the road, and rolled 325 feet to the bottom of a ravine, destroying the truck and injuring plaintiff's back.

Harry Howe, president of Tri-Island Enterprises, had purchased the series 1800 truck from International Harvester of Puerto Rico, Inc., after visiting the Har-

vester sales office in Chicago to discuss modifications to the vehicle.[1] Howe purchased this truck to replace an older International Harvester truck that had also been used to transport water. International Harvester of Puerto Rico removed the water tank from the older truck and installed it on the new truck.

Plaintiff sued Harvester in the District Court for the District of the Virgin Islands. He alleged that the accident was due to a defective U-bolt in the right rear axle of the Harvester truck that broke and caused him to lose control of the vehicle.[2] In the complaint, plaintiff predicated his claim on common-law negligence, strict liability (§ 402A), and breach of an implied warranty of merchantability (U.C.C. § 2–314). During the course of the trial, the Court dismissed the negligence claim, but accepted the plaintiff's contention that the jury should be instructed that he could also recover under a theory of implied warranty of fitness for a particular purpose (U.C.C. § 2–315).

The case was submitted to the jury on special interrogatories. The court submitted an interrogatory on section 402A and another on implied warranty of merchantability:

> 1. Do you find that defendant INTERNATIONAL HARVESTER, INC., being in the business of manufacturing and selling series 1800 Loadstar trucks, manufactured and sold the truck in question in this case in a defective condition, unreasonably dangerous to users or consumers thereof, and that the said truck was expected to and did reach the ultimate consumer (in this case Tri-Island

Enterprises Inc. and its employee KENNETH GUMBS) without substantial change in the condition in which defendant manufactured and sold the said truck?

. . . .

> 3. Do you find that the defendant INTERNATIONAL HARVESTER, INC. breached it's [sic] implied warranty of merchantability?

Special Interrogatories Submitted to the Jury, at 1 (capitalization in the original). The court additionally instructed the jury that interrogatory number three could also be answered in the affirmative if the jury found that Harvester breached an implied warranty of fitness for a particular purpose:

> The question No. 3 goes to the cause about implied breach of warranty. The implied breach of warranty of merchantability or the implied breach of warranty for a particular purpose or both, and that question asks: Do you find the defendant International Harvester, Inc. breached its implied warranty of merchantability. Again, you answer yes or no.

Transcript, May 15, 1982, at 47.

The jury found no liability on the section 402A strict liability theory, but answered affirmatively to the third interrogatory, which, by virtue of the jury charge, encompassed both breach of implied warranty of merchantability and implied warranty of fitness for a particular purpose. Having found that a breach of warranty—under either section 2–314 or 2–315—caused the accident and plaintiff's injuries, the jury

---

1. The truck in question was manufactured in the United States. International Harvester of Puerto Rico, Inc. is not a party to this case.

2. When a U-bolt snaps, the rear axle is separated from the chassis and slides back, pulling the drive shaft and distorting both steering and braking. Harvester maintained that if a U-bolt had snapped, the drive shaft would have fallen and gouged the road as the truck travelled almost 200 feet on the pavement before rolling down the hill. However, there was only a small gouge in the road at the point where the truck left the surface. Harvester contends that the U-bolt broke after the truck hit the guardrail and rolled down the hill. According to Harvester, the accident occurred because the plaintiff was speeding, he had worked 81 hours that week and was fatigued, and the road was wet from rain. Plaintiff presented four witnesses (a mechanic, a tow-truck operator, a Harvester engineer, and an accident reconstruction expert), in order to demonstrate that the U-bolt was defective and caused the accident. The question of sufficiency of evidence is not before us on this appeal.

awarded the plaintiff $268,569.00. It reduced this amount by 20% for comparative fault, however.[3]

Harvester moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The district court denied that motion by memorandum order entered June 11, 1982. Harvester appeals and advances two principal arguments. First, Harvester asserts there was no evidence upon which the jury could have based a finding of breach of warranty of fitness for a particular purpose. Second, noting that the jury's affirmative answer to the breach of warranty interrogatory must therefore rest on a breach of an implied warranty of merchantability, Harvester argues that the elements of the breach of implied warranty of merchantability and strict liability actions are identical, and therefore that the verdicts must be set aside as inconsistent.

## II. *Implied Warranty of Fitness for a Particular Purpose*

■ Section 2–315 of the Uniform Commercial Code, codified at V.I.Code Ann. tit. 11A, § 2–315, creates a cause of action for breach of implied warranty of fitness for a particular purpose. The section provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

If a plaintiff is to recover on the implied warranty of fitness for a particular purpose, he must establish the existence of three conditions:

> (1) The seller must have reason to know the buyer's particular purpose.

> (2) The seller must have reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods.

> (3) The buyer must, in fact, rely upon the seller's skill or judgment.

J. White & R. Summers, *Handbook of the Law under the Uniform Commercial Code* at 358 (2d ed. 1980).[4]

The evidence showed that, prior to the purchase in question, Mr. Howe, the plaintiff's employer, had dealt with Harvester for 11 years and had purchased nine Harvester trucks during that period. Before ordering the truck in question, Howe went to Harvester's Chicago sales office to inquire about new modifications that might be available that would be an improvement over the previous model. Howe considered the possibility of an automatic transmission and a different type of ignition but decided they would not be improvements. Instead, Howe made certain specifications of his own. To compensate for the extra twisting and jarring on St. Thomas roads, Howe asked Harvester to add two leaves to the front suspension spring. Harvester complied with Howe's request. The record does

---

3. Instructions accompanying the verdict form allowed the jury to reduce damages for comparative fault under the warranty theory but not the strict liability theory. Neither party objected to this application of the comparative fault principle. A Virgin Island Statute provides that damages in an action based upon negligence can be reduced for the comparative fault of the plaintiff. V.I.Code Ann. tit. 5, § 1451 (1978). This Court has extended the statute to § 402A cases. *Murray v. Fairbanks Morse,* 610 F.2d 149 (3d Cir.1979). We do not decide here whether comparative fault is also applicable to an implied warranty recovery.

4. The district court instructed the jury:

> Such a warranty [of fitness for a particular purpose] doesn't automatically arise from the contract of sale but depends on two factors which must exist at the time the sale is made. One that the seller at the time of the conduct [sic] of sale has reason to know or knew of the particular purpose for which the buyer is purchasing the product, and two, the seller has reason to know or knew that the buyer is relying on the skill of the seller to provide goods which would be fit for that intended purpose. If you find both of the above conditions to exist each by a preponderance of the evidence then you may find that there was a breach of the implied warranty of fitness for the particular purpose.

Transcript, May 15, 1982, at 43–44. This is an incorrect statement of the law, because it failed to inform the jury that the plaintiff must prove actual reliance as well.

not reveal that Harvester supplied any recommendations of its own as to the suitability of the series 1800 truck for hauling water in St. Thomas.

On appeal, Harvester asserts that plaintiff did not adduce any evidence of Howe's actual reliance on Harvester's skill or judgment and thus failed to prove the existence of a warranty of fitness for a particular purpose. Plaintiff's rejoinder—indeed his whole position on the matter, both in his brief and at oral argument—is as follows:

> What we are concerned about are vehicles sold in St. Thomas, Virgin Islands because that is the place in which this vehicle was going to be operated. Don't sell me a vehicle that you are going to use in Nevada, which is a flat place; Texas, a flat place, Florida, [sic] flat place—that is wide expansive territory. The roadway goes for miles and miles straightway [sic]. Nothing like we have here. So what I am saying is that International Harvester knowing where Bud Howe had his operations; knowing the task that the truck has to perform should have sold Bud Howe a vehicle for St. Thomas, Virgin Islands.

Transcript, May 14, 1982, at 133–34. The plaintiff thus argues that the seller's knowledge of the intended use of the vehicle is sufficient in itself to create an implied warranty of fitness for a particular purpose.

Seller's knowledge of the intended use of a product is a necessary element of the implied warranty, but it is distinct from the actual reliance requirement. V.I.Code Ann. tit. 11A, § 2–315 & Comment 1 ("The buyer, of course, must actually rely on the seller."). Harvester's knowledge that Mr. Howe would use the Series 1800 truck in his water-hauling business in St. Thomas cannot substitute for proof that Mr. Howe relied on the skill or knowledge of Harvester to select a suitable truck.[5]

The record is devoid of evidence that Howe received any recommendations from Harvester as to the suitability of the truck for hauling water in the Virgin Islands. A Harvester engineer testified that if a customer indicated the intended use of a truck, Harvester "would like" to make recommendations. This evidence, standing alone as it does, is plainly insufficient to support a finding of actual reliance. Indeed, Howe could not have relied on Harvester's skill or knowledge because, as far as the record indicates, he did not receive any recommendations from Harvester or any representation of suitability of the truck for hauling water in St. Thomas.[6]

▆ In sum, the sole evidence that supports the plaintiff's section 2–315 theory, Harvester's knowledge that the truck was to be used to deliver water in the Virgin Islands, is not sufficient to establish the actual reliance of the buyer on the seller's skill or judgment. Therefore, this theory of recovery should not have been submitted to the jury.[7]

---

**5.** There is also no evidence in the record demonstrating that Harvester knew or had reason to know that the buyer was relying on its skill or judgment to select a truck for use in hauling water in the Virgin Islands. However, Harvester does not raise an objection on this point, and, given our holding that the plaintiff failed to prove actual reliance, it is a moot point since on retrial plaintiff is foreclosed from reasserting his implied-warranty-of-fitness-for-a-particular-purpose claim.

**6.** The relative state of the knowledge of the two parties about the product is highly relevant, and in the unusual case in which the buyer is more knowledgeable than the seller, the seller may win on the grounds the buyer did not rely. J. White & R. Summers, *Uniform Commercial Code 360* (2d ed. 1979). Even though the Har-

vester sales representative in Chicago knew that Howe was going to use the truck in St. Thomas, there is no evidence that he knew about the hilly terrain on the island. Moreover, it was Howe, who plainly had knowledge of the hilly terrain on St. Thomas, who requested that the springs be modified to withstand the additional stress. The apparently superior knowledge of the buyer is further support for our holding that the buyer did not actually rely on the seller.

**7.** Harvester also objected to the late interposition of the § 2–315 theory. There is much force to this contention, *see Price v. Inland Oil Co.*, 646 F.2d 90 (3d Cir.1981), but we need not reach the timeliness issue in view of our disposition of the § 2–315 claim.

### III. The Relationship Between Restatement § 402A and U.C.C. § 2–314

As we have stated, the jury found that Harvester was liable for breach of an implied warranty of merchantability or an implied warranty of fitness for a particular purpose, or both. But because the jury had insufficient evidence to find for the plaintiff based on the warranty of fitness theory, the verdict must therefore rest on the warranty of merchantability theory.

Harvester argues that, because the elements needed to prove breach of a warranty of merchantability (§ 2–314)[8] and those needed to prove a violation of section 402A[9] are identical,[10] and because the jury found it not liable under section 402A and liable under section 2–314, the jury verdicts are irreconcilably inconsistent. Therefore, Harvester argues, a new trial is required. Plaintiff rejoins that the section 402A definition of defect is more stringent than the section 2–314 requirement because of the additional and arguably qualifying "unreasonably dangerous" language in section 402A. Plaintiff adds that the verdict was appropriate since the court presented a choice of theories to the jury.

In considering these contentions, we do not write on tabula rasa; both courts and commentators have addressed the question and concluded that the elements of the two theories are essentially the same. *See, e.g., Sterner Aero AB v. Page Airmotive, Inc.,* 499 F.2d 709, 712 (10th Cir.1974) ("Many jurisdictions have gradually abandoned the whole concept of implied warranty in products liability, adopting instead the simpler and more manageable concept of strict liability in tort as exemplified by § 402A . . . . [S]trict liability in tort is substantially similar to implied warranty stripped of the contract defenses"); *Davis v. Wyeth Laboratories, Inc.,* 399 F.2d 121 (9th Cir.1968) (difference between strict liability in warranty and tort is "largely one of terminology"); *Neofes v. Robertshaw Controls Co.,* 409 F.Supp. 1376 (S.D.Ind.1976) (under Indiana law a count based on tortious breach of implied warranty is duplicitous of a count based on strict liability and both counts may not be pursued in the same law suit); *Greeno v. Clark Equipment Co.,* 237 F.Supp. 427, 429 (N.D.Ind.1965) ("[I]t may fairly be said that the liability which [§ 402A] would impose is hardly more than what exists under implied warranty when stripped of the contract doctrines of privity, disclaimer, . . . ."); *Bachner v. Pearson,* 479 P.2d 319 (Alaska 1970) (no distinction between warranty and strict tort in products liability cases); *Dickey v. Lockport Prestress, Inc.,*

---

**8.** Plaintiff based his warranty of merchantability claim on V.I.Code Ann. tit. 11A, § 2–314 (1965) which codifies the Uniform Commercial Code § 2–314 and provides in relevant part:

> (1) Unless excluded or modified [§ 2–316], a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind . . . .
> (2) Goods to be merchantable must be at least such as . . .
> (c) are fit for the ordinary purposes for which such goods are used . . . .

**9.** Plaintiff based the strict liability claim on Restatement (Second) of Torts § 402A, which states:

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> (a) the seller is engaged in the business of selling such a product, . . . .

V.I.Code Ann. tit. 1, § 4 (1967) adopts the Restatement as the common law in the Virgin Islands:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

**10.** Both theories require that the product in question be defective at the time it leaves the hands of the seller. *Compare* Restatement (Second) of Torts § 402A comment (g) ("The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff") *with Clark v. DeLaval Separator Corp.,* 639 F.2d 1320, 1326 (5th Cir.1981) (product must be defective in design, material or manufacture at the time of sale for an implied warranty of merchantability to be breached.)

384 N.Y.S.2d 609, 52 App.Div.2d 1075 (1976) (strict products liability and liability to a remote user based on implied warranty are one and the same cause of action, "the former having replaced the latter by evolutionary decisions of the [N.Y.] Court of Appeals"); L. Frumer & M. Friedman, 2 *Products Liability* § 16A[4][f][i] (1983) ("[I]t is fairly clear that if it is shown that the product was not fit for the ordinary purpose for which it was manufactured, it would also be defective for purposes of a strict liability in tort action"); J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 9–7, at 355 (2d ed. 1980) (Merchantability and the unreasonably dangerous standard are "nearly synonymous"); Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)*, 50 Minn.L.Rev. 791, 804 (1966) (The change from warranty to strict liability in tort is "more one of theory than substance. It is only the rules of contract which have been jettisoned, where there is no contract. The substance of the seller's undertaking remains unaffected, and as Chief Justice Traynor himself has agreed, the precedents of the 'warranty' cases will still determine what he must deliver. They will determine also the extent of his liability, except insofar as limitations derived from the law of contract have been applied"). Virgin Island courts have also tended to merge the two theories, applying warranty terms to strict liability causes of action and vice-versa. *See Poole v. Ford Motor Co.,* 17 V.I. 354 (D.V.I.1980); *Battiste v. St. Thomas Diving Club, Inc.,* 15 V.I. 184 (D.V.I.1979).

It is true that comment (i) to section 402A provides: "[t]he rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer .... The article sold must be dangerous to

an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." But this explanation does not necessarily distinguish section 402A from section 2–314.[11] In any event, whether or not there may be an imperfect coincidence between the scope of strict liability in tort and the warranty of merchantability, the defect at issue in this case plainly falls within the common core of both causes of action; we can conceive of no theory under which the allegedly defective U-bolt could have been defective and unfit for its ordinary purposes under section 2–314 but not also defective and unreasonably dangerous within section 402A. Plaintiff has adduced no evidence and advanced no theory as to how this could be so. In this case, then, the jury's answers to interrogatories numbers one and three are irreconcilable. The case must therefore be retried. *Andrasko v. Chamberlain Manufacturing Corp.,* 608 F.2d 944 (3d Cir.1979).

The parties extensively briefed several evidentiary issues arising from the conduct of the trial which, in light of our vacatur and remand, are not dispositive on this appeal. However, because they are important questions which are likely to arise again on retrial, we address them for the guidance of the district court and counsel.

IV. *Evidentiary Questions on Remand*

A. *The Adverse Inference Instruction*

Sonny Oliver, an automobile mechanic who was driving to work on Cassi Hill Road on the morning of plaintiff's accident, saw the Harvester truck in the valley and stopped out of curiosity to inspect it. According to Oliver's trial testimony, he observed that the right rear U-bolts were broken. A few weeks later, plaintiff re-

---

**11.** Since the phrase "unreasonably dangerous" can suggest a higher standard of defect, many states do not use the phrase in jury instructions on strict liability. Instead, they explain the concept of defect in terms similar to the warranty theory of defect. *See* J. Beasley, *Products Liability and the Unreasonably Dangerous Requirement* 101–62 (1981) (12 states do not use the words "unreasonably dangerous" in

strict liability actions); *Azzarello v. Black Bros. Co.,* 480 Pa. 547, 554–59, 391 A.2d 1020, 1025–27 (1978) ("It is clear that the term 'unreasonably dangerous' has no place in the instructions to a jury as to the question of defect in [a products liability action]," and its inclusion in the jury charge is misleading and entitles the plaintiff to a new trial.).

tained Oliver to inspect the vehicle and give an opinion as to the cause of the accident. Oliver went to St. Thomas Dairy where the truck had been towed, and he inspected it again. He removed from the cab of the vehicle the remaining portion of a sheared dowel pin and gave it to plaintiff's counsel. This pin was received into evidence but was not linked to plaintiff's theory of the accident, which focused on the U-bolt. Oliver testified that his second inspection of the vehicle confirmed his theory that the U-bolt was the cause of the accident. Oliver explained that he could have removed or otherwise preserved the broken U-bolt but did not do so, stating at trial, "What am I going to do with the U-bolt?" (Transcript, May 12, 1982, p. 310). During Oliver's second inspection of the truck, he took photographs but did not retain them and did not know where they could be found. (Transcript, May 12, 1982, p. 318).

Harvester contends that Oliver was plaintiff's agent, and that he should have preserved the U-bolt and photographs since they were important evidence on the causation issue. Harvester requested that the court instruct the jury that it could infer from plaintiff's failure to produce this evidence that the tenor of the evidence was unfavorable to the plaintiff's case. The court refused to give such an instruction, but did not explain the basis of the refusal.

■ The unexplained failure or refusal of a party to judicial proceedings to produce evidence that would tend to throw light on the issues authorizes, under certain circumstances, an inference or presumption unfavorable to such party. *Felice v. Long Island R.R. Co.*, 426 F.2d 192 (2d Cir.1970), *cert. denied*, 400 U.S. 820, 91 S.Ct. 37, 27 L.Ed.2d 47 (1970); *United States v. Cherkasky Meat Co.*, 259 F.2d 89 (3d Cir.1958); 31A C.J.S. Evidence § 156(2); 29 Am.Jur.2d Evidence § 178. For the rule to apply, it is essential that the evidence in question be within the party's possession or control. Wigmore, 2 *Treatise on the Anglo-American System of Evidence in Trials at Common Law* § 291.(3)(3) (3d ed. 1940); McCormick, *Handbook of the Law of Evidence*

§ 272 (2d ed. 1972). Further, it must appear that there has been an actual suppression or withholding of the evidence; no unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for. 31A C.J.S. Evidence § 156(2); 29 Am.Jur.2d Evidence § 177 ("Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent). *See Smith v. Uniroyal, Inc.*, 420 F.2d 438 (7th Cir. 1970).

■ Harvester failed to demonstrate that the broken U-bolt and the photographs were (1) within the control of the plaintiff; or (2) that the plaintiff intentionally or fraudulently lost or destroyed the U-bolt. Indeed, this case appears to be closely on point with the *Smith* case. In *Smith,* the plaintiffs alleged that a defective tire manufactured by the defendant exploded causing the plaintiff to lose control of his car and crash. The auto and the tire were transported to a garage where an expert hired by the plaintiff examined them. Subsequently they were sent to a storage pool in Jefferson, Indiana, and finally salvaged in Louisville, Kentucky. Neither the plaintiffs nor the expert that they retained preserved the tire and as a result the defendant's experts were unable to examine it. At trial the defendant argued that "under the circumstances the plaintiffs breached a duty to preserve the tire" and that therefore an adverse inference instruction to the jury was appropriate. The district court and the Seventh Circuit disagreed. The Seventh Circuit stated, "while the record, through investigation by counsel, shows the journey taken by the tire up to its unfortunate demise, it does not show that plaintiffs had knowledge of the tire's location and willfully permitted it to be destroyed nor does it show plaintiff's control of their

tire." *Smith,* 420 F.2d at 441 (quoting the district court with approval).[12]

Since, on the record before us, the plaintiff did not have control of the U-bolt and photographs, and since there is no evidence in the record that the plaintiff willfully permitted the U-bolt and photographs to be lost or destroyed, the district court properly refused to give the adverse inference instruction.[13]

### B. *Motion to Exclude the U.S. Department of Transportation Investigation*

Plaintiff attempted to introduce evidence of certain other accidents involving U-bolts on Harvester trucks that were the subject of a U.S. Department of Transportation ("U.S.D.O.T.") investigation in 1973. Plaintiff sought the admission of two letters, one from U.S.D.O.T. to Harvester and a second from Harvester to U.S.D.O.T., in order to demonstrate Harvester's knowledge of the investigation. In addition, during direct examination of a Harvester engineer, plaintiff sought to introduce the details of the accidents extracted from the U.S.D.O.T. investigative file. U.S.D.O.T. had examined alleged rear-axle U-bolt nut-torque-loss on Harvester Series 1600, 1700, and 1800 loadstar trucks manufactured in 1972 and 1973, but closed the investigation without making any findings.

Two days before the trial, Harvester moved to exclude evidence of the investigation and references to the earlier accidents as irrelevant, misleading, and prejudicial under Rules 401 and 403 of the Federal Rules of Evidence. Harvester asserted that the investigation was irrelevant because the bolts had been changed in response to the U.S.D.O.T. inquiry before the plaintiff's truck was built, and because the subject matter of the investigation was the loosening of the U-bolts, while plaintiff alleged that the U-bolt on the truck he was driving had snapped. Plaintiff rejoined that the investigation was admissible since some of the incidents described were substantially similar to the plaintiff's accident. The district court, evincing displeasure with the tardiness of Harvester's in limine motion, nevertheless heard oral argument on the point during the trial. The court denied the motion, finding that the investigation "is highly relevant if there was some history of trouble with this U-bolt." (Transcript, May 13, 1982, p. 131).

Under the Federal Rules of Evidence, all relevant evidence is admissible.[14] Fed.R.Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it is without the evidence." In products liability cases evidence of prior accidents involving the same product under similar circumstances is admissible to show notice to the defendant of the danger, to show existence of the danger, and to show the cause of the accident. L. Frumer & M. Friedman, 1 *Products Liability* § 1201 (1983). McCormick, *Handbook of the Law of Evidence,* § 200.

The trial judge has wide discretion to admit or exclude evidence under the provisions of the Federal Rules of *Evidence.* J.H. Wigmore, 2 *Evidence* § 444 (Chadbourn Rev.1979); McCormick, *supra,* § 200 (2d ed. 1972). However, for evidence to be relevant there must be some logical relationship between the proffered evidence and plaintiff's theory of the case. The mere fact that the U.S.D.O.T. report con-

---

**12.** The only real distinction between *Smith* and this case is that in *Smith* the plaintiffs owned the car and defective tire, while in this case the plaintiff's employer owned the truck and allegedly-defective U-bolt. Whatever the equitable concerns are of permitting the owner of important evidence to sell it for salvage, they do not exist where the plaintiff never owned the evidence.

**13.** It is possible that on remand additional evidence about the plaintiff's role in permitting destruction of the U-bolt and the photographs will be developed by Harvester.

**14.** Fed.R.Evid. 402 ("All relevant evidence is admissible, except as otherwise provided by the Constitution ... Act of Congress ... these rules, or by other rules prescribed by the Supreme Court.").

cerned U-bolt failures in Harvester trucks is not enough to make the report admissible even under the liberal standard of admissibility of Fed.R.Evid. 401. The plaintiff has the burden of establishing sufficient similarity between the accidents that were the subject of the U.S.D.O.T. investigation and his own theory of how his accident occurred, so that admission of the U.S.D.O.T. report into evidence "will make the existence of any fact that is of consequence to the determination of the action more probable" than it would be without the evidence. Fed.R.Evid. 401. The plaintiff has failed to carry this burden.

First, Harvester changed the U-bolt nuts that it uses in the manufacture of its trucks before the truck operated by plaintiff was manufactured and, hence, the parts are not the same as those that had been under investigation. Second, plaintiff argues that the U-bolt on the truck he was driving snapped, while the U.S.D.O.T. investigation examined the loosening of U-bolts due to nut-torque-loss. Because of these two factors, the accidents that were the subject of the U.S.D.O.T. investigation were not logically related to plaintiff's accident and admission into evidence of the 1973 U.S.D.O.T. report was an abuse of discretion.

## C. Expert Testimony of Future Earnings Loss

■ Plaintiff offered the testimony of Dr. Jones-Hendrickson, a professor of economics, in order to establish plaintiff's past and prospective earnings loss. Dr. Jones-Hendrickson testified that the total economic loss sustained by plaintiff was $268,-569. In arriving at this figure, Dr. Jones-Hendrickson calculated the plaintiff's future earnings loss based on plaintiff's remaining life expectancy of eighteen years rather than plaintiff's remaining work-life expectancy of seven and one-half years (until plaintiff reached age sixty-five). Dr. Jones-Hendrickson also based his projections on an annual income of $14,000, more than twice the plaintiff's average annual income for the four years preceding the accident, and added $1700 in annual fringe benefits even though there was no evidence that the plaintiff had ever received fringe benefits in the past. At trial, Harvester objected to Dr. Jones-Hendrickson's testimony on the ground that these factual predicates were improper. The district court, however, admitted the testimony.

On the basis of the record adduced at the trial Harvester's objections should have been sustained. Dr. Jones-Hendrickson's estimate of plaintiff's future earnings loss was not accompanied by evidence that plaintiff could be expected to work beyond age sixty-five. Similarly, Jones-Hendrickson's calculation of fringe benefits loss was not accompanied by evidence that plaintiff ever received fringe benefits. And Dr. Jones-Hendrickson doubled plaintiff's proven annual income to estimate future earning loss, but no evidence was presented to demonstrate that plaintiff was likely to experience such a dramatic increase in income. On remand, plaintiff's expert's testimony must be accompanied by a sufficient factual foundation before it can be submitted to the jury.

### V. Conclusion

For the reasons stated above, we conclude that plaintiff failed to present sufficient evidence to support a finding that Harvester breached its implied warranty of fitness for a particular purpose. This being so, the jury's affirmative answer to special interrogatory number three must be grounded on a finding that Harvester breached its implied warranty of merchantability. However, under the circumstances of this case the evidence required to prove liability under section 402A (strict liability in tort) and section 2–314 (warranty of merchantability) is the same. Therefore, the jury's answers to the first and third interrogatories are hopelessly irreconcilable. We will accordingly vacate the judgment and remand for a new trial on plaintiff's section 2–314 and section 402A claims.

In addition, we have considered several evidentiary issues which are likely to arise again in the new trial. We hold that the trial court's refusal to grant defendant's request for an adverse inference instruction

was correct, but that the court erred in permitting the U.S.D.O.T. report to be entered into evidence and in permitting plaintiff's expert to testify as to plaintiff's future earnings loss without first requiring plaintiff to establish a factual basis for this testimony.