

**FILED**
January 13, 2026 04:02 PM
ST-2024-CV-00251
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

PETER BLOCH, )
)
      Plaintiff, ) CASE NO. ST-2024-CV-00251
)
v. ) ACTION FOR DAMAGES
)
BOWLINE HOSPITALITY III, LLC d/b/a )
MAFOLIE HOTEL AND RESTAURANT, ) JURY TRIAL DEMANDED
)
      Defendant. ) **Cite as 2026 V.I. Super 1**
)

## MEMORANDUM OPINION

¶ 1    **THIS MATTER** is before the Court upon Plaintiff Peter Bloch's ("Bloch") Motion for Trial Instruction on Spoilation (sic) Inference. Defendant Bowline Hospitality III, LLC d/b/a Mafolie Hotel and Restaurant ("Mafolie" or "Mafolie Hotel and Restaurant") opposes the motion. For the reasons set forth below, Bloch's Motion will be granted.

### 1. FACTUAL BACKGROUND

¶ 2    This matter arises from a fall that occurred on February 7, 2024, at Mafolie Hotel and Restaurant, located at 7091 Estate Mafolie, St. Thomas. According to Bloch, he met his friend Mark Robertson ("Robertson" or "friend") for happy hour and dinner at Mafolie Hotel and Restaurant. They socialized at the bar, had drinks, and ate happy-hour food. The friends planned to meet at Sibs for dessert after leaving Mafolie. Robertson left Mafolie ahead of Bloch. At some point, Bloch exited the restaurant area via the stairway with the intention of meeting Robertson at Sibs. He claims he left the bar at Mafolie Hotel and Restaurant sometime between 7:36 pm and 7:40 p.m., after he and his friend had paid their tab. As he reached the exterior of Mafolie Hotel

and Restaurant, he remembered that he had left his credit card at the bar. He immediately returned to retrieve it.

¶ 3    After retrieving his credit card and as he was exiting the restaurant area for the second time that evening, Bloch claims that, while walking up the stairway with uneven steps, two children were descending from the upper level, so he stepped to the left. He lost his balance and stumbled. He tried to grab the handrail, but it was too low. He fell over the low wall and railing and landed on his head some ten feet below. Bloch claims that he had a "near-fatal fall," suffered a fractured spine and brain damage, and was emergency air-lifted off-island for urgent care. Bloch argues that Mafolie is liable for his injuries because the stairway was unsafe due to the uneven steps and low handrail.[1]

¶ 4    At some point during the evening after the fall, Mafolie's owner and manager, Stephen McGonigle ("McGonigle"), reviewed the videotape of the evening, including the stairway where the incident occurred, and then wrote an incident report that stated:

> Peter and his associate, Mark Roberston, of Marshall and Sterling came to the restaurant and attended happy hour. They had food and drinks. Both men left some time between 6 and 7. Peter left his [credit] card. He returned later that evening to retrieve the card. As he was leaving the premises, he fell on the stairs outside the restaurant, falling and hitting his head. Upon review of the video tape, it appeared Peter was taking the steps two at a time without using the handrail, two children / young adults came around the corner, he crossed his legs, appeared to freeze, lost his balance, and tumbled off the stairs. Four guests at the time had medical training and attended to him until the paramedics came. Mark Robertson returned and spoke with Peter, who was cogent. Mark indicated Peter had 6-7 drinks verbally to Stephen.

The report notes that the video footage was archived. The report has an amendment that states:

---

[1] Pl.'s Mot. for Trial Instr. on Spoliation Inference at 1-2.

Amendment 7/8/24: Clover receipt timestamps indicate the men [Bloch and Roberston] paid their tabs between 6:36 pm and 6:41 pm. Peter's fall, according to UniFi timestamp, occurred at 8:09 pm. Indicating an arrival time back to the property around 8 pm.[2]

¶ 5    McGonigle admitted in his deposition that, after reviewing the video, he failed to preserve a portion of the recording. He failed to preserve the segment of the video showing when Bloch first went up the stairway, then came back down, and the period before the fall, as he was going up the stairs a second time. He testified at his deposition as follows:

Q.    Okay. And did you go back and look at the videotape to see when he actually left the first time?
A.    I did review all of the tape during the evening when I was preparing this report, yes, sir.
Q.    Okay. And did you preserve all that tape for this, other than what you produced to me?
A.    I preserved the tape of the fall, as I felt it was going to be important. And it is our policy to preserve the actual footage of an incident when it occurs.
Q.    Okay. But you didn't preserve the part of the tape that shows him leaving the restaurant earlier that evening?
A.    I did not, sir.
Q.    Okay. And I don't see any notation on any timestamps in this report about when the video shows he left the restaurant. Do you recall looking at that?
A.    I recall looking at that at that time, sir, yes.
Q.    Okay. And what do -- what time do you think the video tape showed him leave the restaurant?
A.    I believe it to be consistent with the 6:00 to 7:00, that I -- that I entered.
Q.    But when I asked you earlier about what's the basis of 6:00 land 7:00, you indicated it as timestamps on the receipts and the statement of April. Are you also now saying that the video showed him leaving between 6:00 and 7:00?
.....
A.    That is correct, sir. [3]

Later during McGonigle's deposition, the following colloquy ensued:

Q.    Okay. It seems to me from the way that your report is written that you seem to think that Peter left before 7:00 o'clock and came back around 8:00 o'clock. Do you

[2] Incident Report, Pl.'s Ex. 2 attached to Pl.'s Mot. for Trial Instr. on Spoliation Inference.
[3] McGonigle's Dep. 14:12-16:17 and 17:2, Nov. 20, 2024; Pl.'s Ex. 3 attached to Pl.'s Mot. for Trial Instr. on Spoliation Inference.

have any idea -- do you have a belief or a thought process where he allegedly was in this one hour that he wasn't there?

A. Not to my knowledge, sir, outside of maybe went to another bar or maybe -- maybe went home.[4]

When McGonigle reviewed the surveillance video on February 7, 2024, he believed that Bloch left

Mafolie for a significant period before returning to retrieve his credit card. He testified that:

Q. Okay. Then you say, Peter left his card. He returned later that evening to retrieve the card. As he was -- as he was leaving the premises, he fell on the stairs outside, falling and hit his head. And this says, upon review of the video tape. So, I take it, you reviewed the videotape that night?

A. Yes, sir.

Q. Okay. And that's the tape that you preserved?

A. Yes, sir.

Q. Okay. And at that particular time, did you think that there was a significant period of time between when he left and when he returned to get his credit card?

A. I did, sir. Approximately, one or two hours.[5]

According to his deposition testimony, McGonigle estimated that Bloch left Mafolie bar for approximately "one to two hours" before returning to retrieve his credit card, and that he was intoxicated when he left.[6] In the incident report and during his deposition, McGonigle noted that Bloch's friend informed him that Bloch had consumed six to seven drinks.

¶ 6    Bloch disputes Mafolie's account of the events. Bloch claims that "McGonigle was trying to manipulate the timeline because he knew Mafolie was responsible for Bloch's excess consumption of alcohol that night," and "he fabricated a new timeline so he could claim Bloch went to some other bar for over an hour before returning to get his credit card." Bloch requests that this Court give a jury instruction during the trial that McGonigle destroyed or failed to preserve

---

[4] *Id.* at 42:5-12
[5] *Id.* at 13:20-25 -14:1
[6] *Id.* at 14:6-11

a relevant portion of the surveillance video he reviewed and referenced in the incident report because it was unfavorable to the Defendant's position.[7]

## 2. LEGAL STANDARD

¶ 7    Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Tutein v. Ford Motor Company*, 67 V.I. 34, 47 (V.I. Super. Ct. 2016) (citing *Canton v. Kmart Corp.*, 2009 U.S. Dist. LEXIS 59352, *2 (D.V.I. 2009)). "The spoliation inference is an adverse inference that permits a jury to infer that destroyed evidence might or would have been unfavorable to the position of the offending party." *Tutein*, 67 V.I. at 47. The inference is predicated on the commonsense notion that if a party destroys evidence, the party did so because the evidence would harm their position. *See Canton*, U.S. Dist. LEXIS 59352, at *2. "Before the spoliation inference can be applied, 'it is essential that the evidence in question be within the spoliator's possession or control,' and 'it must appear that there has been an actual suppression or withholding of evidence.'" *Bright v. United Corp.*, 50 V.I. 215, 226 (V.I. 2008) (citing *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96 (3rd Cir. 1983)). "Such a presumption or inference arises, however, only when the spoliation or destruction was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent." *Bright*, 50 V.I. at 226 (citing *Gumbs*, 718 F.2d at 96).[8] Additionally, the evidence must be relevant to the litigation. *Samuel v. United Corporation*, 64 V.I. 512, 518 (V.I. 2016).

---

[7] Pl.'s Mot. for Trial Instr. on Spoliation Inference at 5-6.

[8] These elements of spoliation inference have been condensed in previous cases to: (1) the evidence in question be within the party's control; (2) there has been actual suppression or withholding of the evidence; the evidence destroyed or withheld was relevant to claims or defenses; and (4) it was reasonably foreseeable that the evidence would later be discoverable. *See Tutein*, 67 V.I. at 47; Demming v. V.I. Water & Power Auth., 2015 V.I. LEXIS 194, *1 (V.I. Super Ct. 2015).

¶ 8     Once the Court finds that there has been spoliation of evidence by the offending party, the Court must next consider the following factors to determine the appropriate sanction: (1) the degree of fault of the spoliator; (2) the degree of prejudice suffered by the movant; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the movant and whether an adverse inference will deter spoliative conduct in the future. *Bright*, 50 V.I. at 225-26; *Halliday v. Cruise Ship Excursions, Inc.*, 2017 LEXIS 19, at *10 (V.I. Super. Ct. 2017).

## 3.  **DISCUSSION**

¶ 9     The Court begins its analysis by determining whether the evidence was within Mafolie's control. *See Bright*, 50 V.I. at 226. Here, the Court finds that based on McGonigle's deposition testimony, it is uncontroverted that the deleted portion of the video was within Mafolie's control. Mafolie does not dispute that McGonigle failed to preserve the surveillance footage of Plaintiff walking up and down the stairs prior to his fall, which would have shown the time of Bloch's initial departure from Mafolie's bar and his return to retrieve his credit card. The video footage was captured by Mafolie's security cameras, and McGonigle testified that he personally reviewed the footage and prepared an incident report based on its contents.

¶ 10    Next, the Court must determine whether there has been an actual suppression or withholding of the evidence. *See id.* Bloch argues that two Virgin Islands Supreme Court cases— *Bright* and *Samuel*, supra—support a finding of intentional destruction of the video, warranting a spoliation instruction. In *Bright,* a customer claimed that she slipped and fell in United Corporation's Plaza Extra supermarket on thick pink liquid that she stated she did not see before she fell, causing injury to her left leg and ankle. The supermarket's manager testified in his deposition that he reviewed the video of Bright's fall immediately after being notified of it, and that the video did not show anything visible on the floor at the time of the fall. The manager then

decided not to review or retain any footage from before or after the fall, and the supermarket retained only footage of the actual fall. 50 V.I. at 220. Similarly, in *Samuel,* a customer slipped and fell on milk that had been spilled on the defendant supermarket's floor. Samuel subsequently filed a complaint seeking damages for her injuries. The supermarket preserved only one minute and twenty-one seconds of footage from before the fall. 64 V.I. at 515. In both cases, the customer argued that a spoliation inference was warranted because the grocery store manager failed to preserve footage that would demonstrate what was on the floor to cause the slip and fall, how long the spill had been on the floor, or how long the area of the store had gone without being inspected by a store employee. *See Bright,* 50 V.I. at 221; *Samuel,* 64 V.I. at 515, 519. The V.I. Supreme Court held that a spoliation instruction to the jury that "it was permitted, although not required, to apply an inference of spoliation" was warranted because the supermarket failed to retain video footage of a "reasonable period of time preceding and following the incident" that would have established whether the supermarket had constructive notice of the spill that caused the customers' fall. *Samuel,* 64 V.I. at 519.

¶ 11    Mafolie argues that this case is distinguishable from *Bright* and *Samuel* for two reasons. It argues that the footage before the fall has no bearing on the claims raised and that spoliation was appropriate in the Supreme Court cases because the video footage was the only evidence that would have established whether the defendant had actual or constructive notice of the spill, showing how long the spill had been there or how long the area had gone uninspected.[9] While *Bright* and *Samuel* differ in the specific circumstances of the plaintiff's injury—*Bright* and *Samuel* concern slip-and-fall incidents in a grocery store, while this case involves a fall allegedly caused

---

[9] Def.'s Opp'n to Mot. for Trial Instr. on Spoliation Inference at 4-5.

by defective construction of a staircase and handrail—the legal issues and principles presented in those cases are instructive.

¶ 12    Mafolie stresses that there is no indication that it acted with fraudulent intent or is seeking to conceal anything. To support its contention that its conduct was not intentional or fraudulent, Mafolie claims that McGonigle followed the company's policy when it preserved the actual footage of the incident but did not preserve surveillance footage of Bloch using the stairs prior to the fall.[10] The Supreme Court of the Virgin Islands twice rejected this argument. In *Samuel* and *Bright,* the Supreme Court held that the defendant supermarket acted with fraudulent intent even though its managers claimed they deleted the video preceding the incident in accordance with the defendant's retention policy. The Supreme Court in *Bright* squarely addressed Mafolie's contention when it stated:

> After reviewing the footage, Plaza's manager retained only the portion of the footage which he believed to be relevant, purportedly in accordance with the store's routine practice. It is clear, however, that Plaza's routine practice regarding the destruction of surveillance footage capturing slip and fall accidents is flawed. Store managers should retain recorded footage of the area in which an accident occurred both prior to and following the accident. Obviously, such footage is likely to provide relevant and valuable evidence regarding the cause or timing of a spill resulting in a slip and fall accident. It is certainly not within the discretion of a store manager to determine what portion of the available recorded surveillance footage is relevant to anticipated litigation. To allow store managers unbridled discretion to determine what footage to retain would encourage the destruction of relevant evidence by allowing managers to destroy unfavorable footage under the pretext of routine practice.

*Bright,* 50 V.I. at 229 (internal citations omitted). In *Samuel,* the Virgin Islands Supreme Court found that despite following United's video-retention policy, "the deletion of the relevant surveillance footage after it was reviewed by the store manager…was enough to indicate Plaza's

---

[10] *Id.* at 3.

bad faith and fraudulent intent to suppress the truth." *Samuel*, 64 V.I. at 519. Hence, Mafolie cannot hide behind its retention policy in failing to preserve relevant evidence.

¶ 13    Mafolie further argues that McGonigle's conduct is consistent with the commonsense expectations imposed by the courts, and that *Bright* and *Samuel* did not require the opposing party to preserve all footage of any time the moving party was on camera.[11] McGonigle's decision to preserve only a limited portion of the video, rather than the surveillance footage capturing Bloch's movements that evening at Mafolie, is inconsistent with the commonsense approach encouraged by the courts in the Virgin Islands. To prevent spoliation sanctions, parties should proactively preserve all relevant evidence. In many instances, events that precede the act that led to an injury may be highly relevant to understanding or explaining the cause of a party's injury. There is no set number of hours or minutes of surveillance video that a court can recommend a party to preserve. Each case is different. Relevant surveillance video may be three minutes in one case and three hours in another. In *Bright,* the Supreme Court noted that "[w]hile this Court does not find any statutory or case law indicating precisely what portion of surveillance footage capturing a slip and fall accident should be retained, common sense dictates the retention of comprehensive surveillance footage of any accident, including a reasonable period of time preceding and following the accident." *Id*.

¶ 14    In this case, McGonigle reviewed the videotape that showed the time when Bloch left the Mafolie bar and returned to retrieve his credit card. In his February 7, 2024, report, McGonigle reported that Bloch and his friend "left sometime between 6 and 7. Peter left his [credit] card. He returned later that evening to retrieve the card." He subsequently supplemented the report by

---

[11] *Id*. at 5.

adding that they "paid their tabs between 6:36 pm and 6:41 pm. Peter's fall, according to UniFi timestamp, occurred at 8:09 pm. Indicating an arrival time back to the property around 8 pm."[12] McGonigle noted that Bloch's friend stated that Bloch had 6-7 drinks.[13] McGonigle reviewed the video he failed to preserve, recognized its importance, documented his observations in the incident report he prepared, and supplemented the report to corroborate those observations. The information provided in McGonigle's report regarding Bloch's movements before the fall, and his reference to the timestamp on the credit card receipts, belies Mafolie's argument that McGonigle did not believe that portion of the recording was important and therefore did not preserve it. His actions demonstrate otherwise. Moreover, as the CEO of Mafolie, conducting an investigation of such a serious incident, McGonigle should have known that the time period between when Bloch left the Mafolie bar and returned to retrieve his credit card, and whether Bloch's alcohol consumption contributed to the incident, would be pertinent in any litigation. McGonigle should have retained a "comprehensive surveillance footage" of Bloch's activities at Mafolie that evening. If he was unsure which portion of the surveillance video to preserve, he had the opportunity to seek legal advice before deleting or failing to preserve any pertinent video footage. The Court finds that there was intentional suppression or withholding of portions of the surveillance video.

¶ 15    Mafolie argues that, unlike *Bright* and *Samuel,* there is other evidence in this case that resolves the timeline dispute. It claims that there is ample alternative evidence to establish the timeline without the need for a spoliation inference. Mafolie states that it preserved credit card receipts, text messages between McGonigle and a couple he met at the bar, a text message from Robertson to Bloch, the three minutes of surveillance video of the incident and the response of

---

[12]Incident Report, Pl.'s Ex. 2 attached to Pl.'s Mot. for Trial Instr. on Spoliation Inference.
[13] Id.

those who rendered assistance, and the incident report, which included a witness interview. Additionally, Mafolie argues that the medical report demonstrates how intoxicated Bloch was while leaving – thus, the footage is not needed to show how he was walking. Mafolie points out that hospital records immediately following the incident show that Bloch's blood alcohol content was .22, nearly triple the legal limit to drive.[14]

¶ 16    As Bloch points out, the recorded time on the receipts are in dispute. Bloch and his friend's credit card receipts are time-stamped 6:36 p.m. and 6:40 p.m.[15] The receipts do not state whether the recorded time is Atlantic Standard Time (AST) or Eastern Standard Time (EST). Bloch fell at approximately 8: 09 p.m.[16] Bloch claims that the receipts were generated at 7:36 p.m. and 7:40 p.m. AST.[17] To support his timeline of events, Bloch states that his credit card expert examined the receipts generated at 6:36 p.m. and 6:40 p.m. and contacted the credit card processing company, ePaymentAmerica, to confirm whether the receipts were generated in EST or AST. Plaintiff's expert concluded that the receipts were run at EST; however, in February 2024, that would have been 7:36 p.m. and 7:40 p.m. in the Virgin Islands. Bloch points out that Mafolie bar also issued a separate receipt not referenced in McGonigle's incident report, which shows a different time from the time on the credit card receipts referenced in McGonigle's incident report. The Mafolie Hotel receipt dated February 7, 2024, is timestamped 7:39:55 pm.[18] Bloch claims that the Mafolie Hotel receipt supports his version of the events.

---

[14] *Id.* at 5.
[15] Receipts attached to Pl.'s Expert Todd Gentilucci's Report, Pl's Ex. 6 attached to Pl.'s Mot. for Trial Instr. on Spoliation Inference.
[16] Incident Report, Pl.'s Ex. 2 attached to Pl.'s Mot. for Trial Instr. on Spoliation Inference.
[17] Pl.'s Suppl. Resp. to Def.'s First Set of Interrogatories, Pl.'s Ex. 4 attached to Pl.'s Mot. for Trial Instr. on Spoliation Inference.
[18] Mafolie Receipt, Pl.'s Ex. 5 attached to Pl.'s Mot. for Trial Instr. on Spoliation Inference.

¶ 17    Conflicting reports from ePaymentAmerica have amplified the dispute. Plaintiff's expert claims that he was informed by an ePaymentAmerica representative that the credit card receipts time-stamped 6:36 p.m. and 6:40 p.m. were physically run at 6:36 p.m. and 6:40 p.m. EST. In an email to Defendant's counsel dated November 6, 2025, a representative of ePaymentAmerica informed him that the credit card receipts with the time-stamp of 6:36 p.m. and 6:40 p.m. are actually in AST, not EST.[19] Clearly, the timeline of events is in dispute. As Bloch argues, the timestamp on the erased video would have been conclusive of whether Bloch left the Mafolie for an hour or more before returning to collect his credit card and, shortly thereafter, falling over the railing.

¶ 18    In addition, Mafolie fails to explain how the text message Robertson sent to Bloch and the text message Bloch received from a couple he was speaking to at the bar resolve and support its version of the timeline of events. On February 7, 2024, at 7:50 p.m., Bloch's friend sent him a text message asking, "Are you coming to Sibs? wtf peetah! I hope you got home safely." At his deposition, Robertson testified that he left the Mafolie Hotel before Bloch, drove to Sibs, and waited approximately half an hour before sending the text at 7:50.  Bloch never met Robertson at Sibs, as the friends had planned.[20] Robertson also testified that, when he left Mafolie bar, Bloch was speaking with a couple seated next to him.[21]  Mafolie noted that Bloch received a text message from a couple with whom Peter was speaking at the bar at 7:21 p.m. The text, with the couple's full names, asked, "Peter? What's your last name." Contrary to Mafolie's contention, the texts do not prove that Bloch was not at Mafolie when he received the text messages.

---

[19] Pl.'s Mot. in Lim. Re Hearsay Statement Proffered by Def., Ex. 1. The Parties discussed the November 6, 2025, email at the December 12, 2025 Hearing.

[20] Mark Robertson's Dep. Nov. 20, 2023, 7-11; Def's Ex. D attached to Def.'s Resp. to Notice of Filing Resp. to Court's July 23rd Question re a Possible Stipulation as to Pl.'s Spoilation Mot.

[21] *Id.* at 14: 2-8

¶ 19   If McGonigle had preserved the deleted portion of the video surveillance, the jury would have been able to observe Bloch's mannerisms before he fell. Although the emergency room medical report includes information on Bloch's blood alcohol level, it does not show whether Bloch was staggering, uncoordinated in his movements, had an unsteady gait, was so impaired that he stumbled down the stairs, or left Mafolie to drink more alcohol at another location. Bloch contends that the deleted video would have shown that he had no problems walking up and down the steps and that he exhibited no signs of being impaired by alcohol.[22] The Court finds Bloch's contention that the deleted video would have resolved the timeline dispute and provided additional context regarding the cause of Bloch's injuries persuasive.

¶ 20   A spoliation instruction is the appropriate remedy in this instance. McGonigle has admitted that he failed to preserve the portion of the video that is the subject of Bloch's Motion. The timestamp on the deleted video surveillance footage would have shown whether Bloch left Mafolie for more than an hour before returning to the Mafolie bar to collect his credit card. Bloch has been prejudiced by the destruction of the video as it places in contention whether, after drinking at Mafolie bar, Bloch left the bar and, while outside the Mafolie Hotel, realized he had left his credit card at the bar and immediately returned to retrieve it or whether, after leaving the Mafolie bar, Bloch went to another bar for approximately an hour to drink and then returned to Mafolie to collect his credit card. The video would have arguably shown Bloch's gait while he walked up and down the stairway, and whether Bloch stumbled down the stairway because he was so impaired by the alcohol he had consumed that evening or fell because of a defect in the construction of the stairway or railing. In other words, the destroyed video could have assisted the jury in its

---

[22] Pl.'s Mot. for Trial Instr. on Spoilation Inference at 3.

deliberations on whether Mafolie is solely responsible for Bloch's injuries or whether Bloch is comparatively negligent.

### 4. CONCLUSION

¶ 21    The Court agrees with Bloch that the portion of the surveillance video that was deleted or not preserved by Mafolie is relevant and would have resolved the timeline dispute. It would have confirmed the time Bloch first left the bar and would have determined whether Bloch left Mafolie for more than an hour to drink at another bar before returning to Mafolie's bar to obtain his credit card. It may have provided additional insight into whether Bloch fell over the railing because of a defect in the railing's construction or because he was so impaired by the amount of alcohol he consumed that evening. A spoliation instruction would remedy the prejudice to the Plaintiff. The Court finds that no lesser sanction would be appropriate. Accordingly, Plaintiff's Motion for Trial Instruction on Spoliation Inference is granted, and an order consistent with this Memorandum Opinion will be entered.

Dated: January 13, 2026

**HON. CAROL THOMAS-JACOBS**
Judge of the Superior Court
of the U.S. Virgin Islands

ATTEST
Tamara Charles
Clerk of the Court

By: _____
Laytoya Camacho
Court Clerk Supervisor ___/___/___ 1 / 13 / 2026