Edna M. SMITH and Noble Smith, Plaintiffs-Appellees,

v.

UNIROYAL, INC., Defendant-Appellant.

No. 17617.

United States Court of Appeals Seventh Circuit.

Jan. 9, 1970.

---

Charles E. MacGregor, James E. Bourne, New Albany, Ind., for defendant-appellant; Orbison, Rudy & O'Connor, New Albany, Ind., of counsel.

Sydney L. Berger, Evansville, Ind., George H. Gossman, Seymour, Ind., for plaintiffs-appellees.

Before MAJOR, Senior Circuit Judge, and CUMMINGS and KERNER, Circuit Judges.

MAJOR, Senior Circuit Judge.

In this diversity action, plaintiffs sought to recover for damages sustained in an automobile accident which allegedly resulted from a defective tire manufactured by defendant and placed on plaintiffs' automobile. The complaint contained three counts based upon negligence, breach of implied warranty and strict liability. The case was tried to a jury, and submitted on counts 2 and 3, count 1 having been dismissed during the trial. Defendant's motions for a directed verdict made at the conclusion of plaintiffs' evidence and at the conclusion of all of the evidence were denied by the court. The jury found for plaintiffs, awarding to Edna M. Smith damages in the amount of $20,000, and to Noble Smith damages in the amount of $7,500. Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied. Judgment was entered in favor of plaintiffs in accordance with the jury's verdict, from which defendant appeals.

Inasmuch as defendant makes no complaint as to the amount which the jury awarded to plaintiffs, no detailed statement in this respect is required. It is sufficient to note that Edna Smith sustained severe injuries from which she was still suffering at the time of the trial, and that both plaintiffs incurred

large hospital, medical and other expenses in her behalf.

■ It is agreed that plaintiffs had the burden of proving (1) a defect in the U.S. Royal tire manufactured by defendant; (2) that the defect existed when the tire left defendant's control and entered the stream of commerce, and (3) that the defect was the proximate cause of plaintiffs' injuries and damages.

Defendant contends that the court erred in admitting the testimony of plaintiffs' expert witness, George Guernsey, concerning the cause of the tire failure when such tire was neither made available to defendant for examination and inspection nor presented in evidence at the trial. Closely related to this issue, defendant contends that the court erred in permitting Guernsey to give an opinion as an expert witness as to the cause of the tire failure. These issues were properly raised by defendant's objection during the trial and by its motion at the conclusion of the trial to strike Guernsey's testimony. Defendant also contends that the court erred in its denial of defendant's motion for a directed verdict and its motion for judgment notwithstanding the verdict. Lastly, defendant contends that the court erred in its refusal to give certain instructions offered by it.

■ We need not cite cases for two well established rules to which both parties on brief subscribe, (1) that a trial court has wide discretion in determining the competency of a witness to testify as an expert, and (2) that in ruling on a motion for a directed verdict as well as a motion notwithstanding the verdict, the court must consider the facts, together with all reasonable inferences which may be drawn therefrom, in the light most favorable to plaintiffs. We also note that Judge James E. Noland, the trial Judge, in connection with defendant's post-trial motions rendered a well reasoned opinion (not published) in which he considered and decided ad-

versely to defendant the issues raised on this appeal.

On November 3, 1966, plaintiff Noble Smith purchased two new U.S. Royal Winter Patrol snow tires, manufactured by defendant, from its approved tire dealer, George's of Seymour, Inc., who mounted the tires on the rear wheels of plaintiffs' 1966 Buick automobile. Noble Smith told defendant's dealer that he wanted the best tires he could get because his wife had to drive back and forth to Indianapolis where his little girl was in Riley Hospital. On the evening of January 27, 1967, he took his automobile to a service station, checked the tires for cuts or nails and found nothing wrong with them. He found that each tire carried the correct amount of air.

Plaintiff Edna M. Smith testified that on the next morning, January 28, 1967, she left her home in said Buick automobile with her son and daughter. About 10:30 a. m., while driving south on Interstate Highway 65 in Clark County, Indiana, she heard a "booming noise," a "sizzy-like" noise of air, then the rim of the right rear wheel hit the road. The right rear tire, one of the two new U.S. Royal tires manufactured by defendant, had blown out. The back end of her automobile started "fishtailing" and she could not hold it on the road; it turned over two times and came to rest upside down on its top. She and her children were suspended upside down in their seat belts. During the time she drove the car that morning, there was no broken glass, debris or foreign matter on the road. At the time it blew out, said U.S. Royal tire had never been overloaded and had traveled only 3,000 miles.

A state police officer who had 9 years' experience during which he had investigated approximately 75 to 100 automobile accidents each year was called to the scene of the accident. He testified that he made a detailed examination of the highway in the area and found no road hazards or any foreign matter. He inspected said right rear U.S. Royal tire and saw a hole in the tread, with a por-

tion of it missing. There was also a large area of this tire where he could put his hand through between the rim and the tire, where the tire was broken loose from the rim. The tire appeared to have lost air pressure suddenly; it was a blowout. All three of the other tires were still on the rims, intact as far as he could see. The right rear tire was the only tire that did not appear to be on the rim.

The officer further testified there were skid marks on the pavement from a tire for approximately 360 feet. The skid marks were intermittent for 240 feet, and then became solid for 120 feet, to the point where the car left the pavement and rolled over. At the point where the skid marks became solid, there was also a scratch and a gouge in the concrete pavement which ran right along with the skid marks directly to the point where the car left the pavement and rolled over. The gouge marks in the pavement were caused by the rim of the wheel on which this U.S. Royal tire was mounted, rolling along the pavement after the tire blew out. This rim was bent and showed abrasion marks caused by its contact with the pavement.

Shortly after the accident, the automobile was removed to the garage operated by George Guernsey, where the tire in question was inspected by him. He was permitted, over defendant's objection, to testify as an expert witness and to give his opinion as to the cause of the blowout. Defendant urgently insists that the court erred in the admission of his testimony because the tire was not presented in evidence or made available to defendant for examination and inspection. On this point we can do no better than quote from the opinion of the district court:

"The parties stipulated at trial that the tire in question was not preserved and was unavailable for inspection by defendant or as evidence at trial. They also stipulated that the auto and the tire were transported to the Guernsey Garage immediately after the accident, that they were thence sent to a storage pool in Jeffersonville, Indiana, finally being salvaged in Louisville, Kentucky. Defendant contends that under these circumstances the plaintiffs breached a duty to preserve the tire and that, consequently, they should not have been permitted to present testimony of a person who inspected the tire, as to the presence of a defect.

"The Court disagrees. While the record, through investigation by counsel, shows the journey taken by the tire up to its unfortunate demise, it does not show that plaintiffs had knowledge of the tire's location and willfully permitted it to be destroyed nor does it show plaintiffs' control of their tire."

■ Defendant cites no case in support of its contention on this point, and we agree with the district court that it is not tenable.

■ In response to defendant's contention that Guernsey was not competent to testify as an expert witness, we again quote from the opinion of the district court, with which we agree:

"Counsel interrogated Mr. Guernsey as to his qualifications in the jury's presence; the Court then questioned him on the same subject at length outside the jury's presence. It appears that Guernsey had the following experience: Since having automotive training, including tires, in the U.S. Army, the witness has operated a garage and service station for 22 years, during which time he has handled and sold tires of several national manufacturers. During the same time he has made price adjustments for several manufacturers on approximately 50–75 deflated tires a year. He testified that he can tell the difference between a tire which has failed from a road hazard and one which has failed from a defect in construction, and that he observes this difference on each tire which he adjusts. The witness also can distinguish a cut in a tire from a

weakening of the fabric or bead, and has read some literature on tire failure. Mr. Guernsey has had no formal education in the causes of tire failure and professes no specialized knowledge of tire manufacturing processes.

"Applying Indiana law, as required in the absence of federal rule on expert testimony, Diesbourg v. Hazel-Atlas Glass Co., 176 F.2d 410 (3rd Cir. 1949), this Court finds that Mr. Guernsey was qualified to give his opinion as to the cause of the tire failure. Isenhour v. State, 157 Ind. 517, 62 N.E. 40 (1901); State v. Vaughan, 243 Ind. 221, 184 N.E.2d 143 (1962). The witness gave his opinion on his personal observation and examination of the tire, first stating to the jury the facts upon which he based his opinion. Mutual Life Insurance Co. of New York v. Jay, 112 Ind.App. 383, 44 N.E.2d 1020 (1942)."

After Guernsey had testified as to the condition of the tire, he was asked whether he had an opinion as to the cause of the damage and, over defendant's objection, answered, "My opinion was that it was a defect in materials and workmanship, one or the other, during construction of the tire. This is from previous experience handling tires for the last 22 years."

Defendant argues that this opinion testimony was incredible, based largely on matters developed on cross-examination; for instance, Guernsey admitted that he had no experience in the manufacture of tires, that he did not know whether the defect about which he testified was as to materials or workmanship, and that the examination upon which his testimony was largely predicated lasted perhaps not more than a minute. We think that a person with the experience of Guernsey would not need to know the process by which a tire was manufactured, or that it would take no more than a good look to recognize a blowout and not much longer to form an opinion that it resulted from a defect in the tire.

Defendant also attacks Guernsey's testimony because of his admission on cross-examination that he did not know from his inspection what caused the blowout, and asserts that this is entirely inconsistent with the opinion he had previously expressed. We agree with the district court that "The witness's statement that he did not know what caused the blowout did not preclude his having an opinion as to the cause, as discussed above. Though the Court sees no true inconsistency, if there was such it was to be considered by the jury."

We agree that the case was properly submitted to the jury and that the proof was sufficient to support its verdict. We recognize that defendant's argument to the contrary is not without plausibility, but it rests in the main upon its claim that Guernsey was erroneously permitted to testify as an expert and that his testimony was so contradictory as to be entitled to little, if any, weight. This same argument no doubt was made in the district court and rejected by both the court and the jury. We are not persuaded that it should be embraced by this court.

Finally, defendant contends that the court committed reversible error in refusing to give its proffered instructions 12, 13, 20 and 27. Instructions 12 and 13 relate to plaintiffs' failure to produce at the trial the blown out tire. They would have informed the jury that "where a party has the power and opportunity of producing evidence" and fails to do so, there is a presumption that the evidence would have been unfavorable to such party.

Defendant in support of its contention that these instructions state a correct rule of law cites our decision in A. C. Becken Co. v. Gemex Corp., 314 F.2d 839. In that case the plaintiff destroyed its own records within two years after it had filed its suit. This court stated (page 841):

"The situation which it created by the destruction of these records while the

litigation was pending is akin to that created by a party refraining from calling a witness who would be able to testify about a material point. * * * The law is well settled that these circumstances give rise to an inference that the records destroyed would have been unfavorable to plaintiff."

The facts relative to plaintiffs' failure to produce the tire were stipulated (as previously shown by our quotation from the district court's opinion), and demonstrate that the rule sought to be invoked in these instructions was without application.

Defendant's proffered instruction 20 would have instructed the jury that the fact that a tire loses air is not evidence that it was in a defective condition at the time it left the manufacturer. Instruction 27 would have instructed the jury that the fact that the tire became damaged is not proof that defendant breached an implied warranty or other duty to plaintiffs. Defendant cites cases which have held that a tire blowout alone is not evidence that the tire was defective, including Shramek v. General Motors Corp., 69 Ill.App.2d 72, 216 N.E. 2d 244, and Wojciuk v. U. S. Rubber Co., 19 Wis.2d 224, 120 N.W.2d 47, 6 A.L.R. 3d 1357. As the district court in its opinion pointed out, these cases "dealt with a situation where the occurrence of an accident was the sole possible evidence of a defect." No such narrow factual issue was presented in the instant case.

We find no error in the court's refusal to give defendant's rejected instructions. The court instructed the jury fully and adequately upon every facet of the case, as is evidenced by the fact that no complaint is made of the charge as given. In any event, the refusal to give the instructions was not of such a prejudicial nature as to require a reversal.

The judgment appealed from is
Affirmed.