**Evelyn and Jack LEWY, Appellees,**

v.

**REMINGTON ARMS CO.,
INC., Appellant.**

**No. 86–2215.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1987.

Decided Jan. 7, 1988.

Rehearings and Rehearings En Banc
Denied March 14, 1988.

---

Jack Headley, John W. Shaw, Kansas City, Mo., for appellant.

William H. McDonald, Richard C. Miller, Springfield, Mo., for appellees.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Remington appeals from a final judgment entered by the district court on a jury verdict awarding Evelyn Lewy $20,000 in compensatory damages and $400,000 in punitive damages in this products liability suit. For the reasons stated below we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

On November 14, 1982, Mike Lewy went deer hunting on the family land where he and his parents, Evelyn and Jack Lewy, lived. He returned home around noon and entered his basement living quarters, placing his loaded Remington Model 700 bolt-action center fire 30.06 rifle (M700) on a couch. Prior to going to bed at around 10:30 that evening, Mike remembered the loaded rifle and decided to unload it. Mike pointed the rifle toward the ceiling and proceeded to unload it. The design of the rifle required the safety to be moved to the fire position in order to lift the bolt handle to eject a chambered cartridge. When Mike placed the safety on the fire position the rifle discharged and the bullet penetrated the ceiling striking his mother in the upper left leg while she was seated in a living room chair. Mrs. Lewy required hospitalization for slightly more than a month, but she has now apparently recovered from the accident.

Mrs. Lewy and her husband filed suit against Remington Arms and the K–Mart Corporation for damages, alleging three separate theories of liability: strict liability—design defect, strict liability—failure to warn, and negligent failure to warn. The Lewys alleged two design defects: 1) the bolt lock feature which required the rifle to be in the fire position when unloading and 2) the fire control mechanism which is susceptible to firing on release of the safety (FSR). Evelyn Lewy claimed damages for personal injuries and Jack Lewy claimed damages for loss of consortium. The jury returned a verdict in favor of the Lewys on all three theories of liability. Evelyn Lewy was awarded $20,000 in compensatory damages and $400,000 in punitive damages while Jack Lewy was not awarded monetary damages.

## II. DISCUSSION

Remington raises several arguments on appeal: 1) the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict on the issue of punitive damages; 2) the trial court erred in admitting evidence regarding similar incidents involving other Model 700 rifles; 3) the trial court erred in allowing evidence concerning the Model 600 rifle; and 4) a litany of errors which occurred during the trial had the cumulative effect of depriving Remington of a fair trial. We will address the arguments in order beginning with the issue of punitive damages.

### A. Punitive Damages

Remington argues that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict on the issue of punitive damages. Remington argues that the evidence was insufficient as a matter of law to submit the punitive damages claim to the jury on either the defective design or failure to warn theories because the Lewys did not prove that Remington acted with conscious disregard for the safety of others.

The standard for granting a motion for a directed verdict, under both federal and Missouri state law, is whether the evidence, when viewed in the light most favorable to the nonmoving party, is such that reasonable persons could only conclude that the movant should prevail. *Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1336 (8th Cir.1985) (*Hale I*). This standard is the same for the granting of a judgment notwithstanding the verdict. *Hale v. Firestone Tire & Rubber Co.*, 820 F.2d 928, 936 (8th Cir.1987) (*Hale II*). We hold that the district court did not err in denying Remington's motions.

Because we hold, *infra*, that the trial court improperly allowed evidence concerning the Model 600 Rifle, we will not consider this evidence when reviewing the record to determine whether there was sufficient evidence to submit the issue of punitive damages to the jury.

Under Missouri law a plaintiff may recover punitive damages if the defendant acts with "complete indifference to or conscious disregard for the safety of others." *Roth v. Black & Decker*, 737 F.2d 779, 782 (8th Cir.1984); *Bhagvandoss v. Beiersdorf, Inc.*, 723 S.W.2d 392, 397 (Mo. banc 1987); *Racer v. Utterman*, 629 S.W.2d 387, 396 (Mo.App.1981), *appeal dismissed, cert. denied sub nom. Racer v. Johnson & Johnson*, 459 U.S. 803, 103 S.Ct. 26, 74 L.Ed.2d 42 (1982).

■ We hold that there was sufficient evidence from which the jury could find that Remington knew the M700 was dangerous. The following evidence was before the jury: complaints from customers and gunsmiths that the Model 700 would fire upon release of safety, some of these complaints dating back as far as the early 1970s;[1] Remington's own internal doc-

---

1. Many of the customers complaining to Remington about alleged FSR's were adamant in their correspondence with Remington. Some excerpts of the customer complaints appear below.

I don't agree with your analysis of the 3 incidents I reported to you (the 3rd incident was directly witnessed by 2 other people). (J.A. IV at 645).
Your letter advised that your experts have concluded their examination and that the rifle

uments show that complaints were received more than two years before the Lewy rifle was produced; Remington created a Product Safety Subcommittee to evaluate M700 complaints and on two occasions decided against recalling the M700; and Remington responded to every customer complaint with a form letter that stated that they were unable to duplicate the problem, that the customer must have inadvertently pulled the trigger and that Remington could not assume liability for the discharge.

We believe that in viewing this evidence, and permissible inferences, in the light most favorable to the Lewys a jury could reasonably conclude that Remington was acting with conscious disregard for the safety of others. Remington maintains that their actions in investigating and responding to customer complaints and in creating the Product Safety Subcommittee to study the customer complaints reflect their good faith and sincerity in dealing with the M700. However, another permissible view to be drawn from all of this evidence may be that Remington was merely "gearing up" for a second round of litigation similar to the litigation involving the M600 which resulted in the ultimate recall of the M600. Remington's Product

Safety Subcommittee concluded that of approximately two million M700s held by the public about 20,000 of them may have a potential defect.[2] A recall was not pursued because of the relatively small number of rifles that may have the defective condition. *See, e.g., Kehm v. Proctor & Gamble Mfg. Co.*, 724 F.2d 613, 620 (8th Cir.1983) ("[I]n determining whether a manufacturer has a duty to warn, courts inquire whether the manufacturer knew that there were even a relatively few persons who could not use its product without serious injury, and whether a proper warning would have helped prevent harm to them."). Thus, the jury may have concluded that rather than suffer the expense of a recall, Remington would rather take their chances that the 20,000 potentially dangerous M700 rifles held by the public will not cause an accident. Such a view, if true, would certainly establish that Remington acted with conscious disregard for the safety of others.

## B. Similar incidents involving other Remington Model 700 Rifles

Remington next argues that the district court erroneously admitted evidence of other Model 700s which were claimed to have

has passed all necessary tests and that possibly there was pressure applied to the trigger mechanism. Please be advised that I intend to hold Remington Arms Company fully responsible for the malfunctions of this rifle regardless of what their experts say.

   \*    \*    \*    \*    \*    \*

Therefore, if you are willing to send this rifle back to me, then your company *will assume all responsibility for the same.*

(J.A. Vol. IV at 726) (emphasis in original). Please be advised that the subject rifle purchased from your firm has a very dangerous defect. The rifle will discharge when the safety switch is moved from the safety position to the fire position, and it will discharge when the bolt is moved to clear cartridges from the chamber and clip.

   \*    \*    \*    \*    \*    \*

By copy of this letter I am putting the manufacturer on notice of these problems.

(J.A. Vol. IV at 808). I am however, going on record as completely disagreeing with your conclusion that the trigger was being pulled at the same time the safety lever was being removed from the "safe" position to the "fire" position. \* \* \*

Your conclusion is simply not correct, and it goes without saying that I will not accept your position of having no liability should this condition persist.

(J.A. Vol. IV at 817). Many of the complainants sent copies of their complaints to their attorneys in apparent anticipation of litigation; and all of these complaints were sent to Remington before the Lewy accident occurred.

**2.** Remington argues that this statement, made during a Product Safety Subcommittee meeting, was made when discussing the "Trick" condition and not the FSR condition, which was the alleged defect in the Lewy M700. However, we believe that a reasonable jury could conclude that there is no difference in the Trick and FSR conditions. The evidence which was presented to distinguish these two conditions was confusing at best. It is apparent that the trial court was confused with Remington's distinction as is this court. Extensive briefing and oral argument on this distinction have not relieved the confusion. We believe that this evidence supports the district court's decision to submit the issue of punitive damages to the jury.

discharged when the safety was placed in the fire position. We disagree.

■ In order to be admissible a proper foundation must be laid showing that the other incidents involving a Model 700 discharging on release of the safety occurred under circumstances substantially similar to the circumstances surrounding the discharge of the Lewy rifle. *Hale II*, 820 F.2d at 934; *Johnson v. Colt Indus. Operating Corp.*, 797 F.2d 1530, 1534 (10th Cir.1986). The Lewys laid an adequate foundation for admission of the related incidents involving the Model 700. *See, e.g., R.W. Murray, Co. v. Shatterproof Glass Corp.*, 758 F.2d 266, 275 (8th Cir.1985).

The Lewys laid a foundation which established that the Model 700 evidence introduced was substantially similar to the Lewy Model 700. The Lewys established substantial similarity in both manufacture and defect primarily from records maintained by Remington. Remington prepared Gun Examination Reports (GERs) for every Model 700 which was returned to Remington because of customer complaints that the rifle fired on release of safety. Each report contains a statement of the customer's complaint and the circumstances relating to the alleged FSR. These GERs, as well as the other evidence supporting them, sufficiently established the foundation for the admission of the M700 evidence. In addition to the GERs, the Lewys introduced customer complaint letters, responsive correspondence prepared by Remington, and depositions and live testimony of some of the customers who complained to Remington.

It should also be noted that the district court did not allow the Lewys to admit all M700 evidence carte blanche. In fact the district court specifically excluded any evidence of M700 discharges that may have resulted from other causes unrelated to the alleged defect in the Lewy rifle.

On remand, once the evidence is admitted Remington remains free to argue to the jury that the evidence is not persuasive by pointing out the dissimilarities in the M700 evidence and the Lewy rifle. *Kehm*, 724 F.2d at 626.

■ Remington also argues that the evidence regarding other Model 700s is irrelevant. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. As we have previously noted, a foundation was properly laid establishing that the Model 700 evidence was substantially similar to the Lewy Model 700. Therefore, the evidence was relevant to several contested issues in the trial. First, it was relevant to whether Remington had notice. Notice was a hotly contested issue and was an important element of the Lewy's failure to warn theory of the case. Additionally, notice is important in establishing a submissible case for punitive damages. Second, the evidence was relevant to show causation. "Under Fed.R.Evid. 401, evidence of similar occurrences 'might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, * * * the standard of care, and causation.' " *Kehm*, 724 F.2d at 625 (quoting *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 338–39 (5th Cir.1980), *cert. denied sub nom. Rucker Co. v. Shell Oil Co.*, 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed. 2d 840 (1981) ); *Thomas v. Chrysler Corp.*, 717 F.2d 1223, 1224–25 (8th Cir.1983).

### C. Similar incidents involving Remington Model 600 Rifles

The district court allowed the Lewys to introduce extensive evidence concerning the Remington Model 600 rifle, Remington's recall of the Model 600, and the settlement of a serious personal injury lawsuit involving the Model 600. Remington made several objections to this evidence and at the conclusion of the trial requested the court to issue a withdrawal instruction instructing the jury to disregard the evidence concerning the Model 600 rifle. The district court, although expressing reservations on the admission of the evidence, denied Remington's requests for a withdrawal instruction.

The Lewys argue that evidence concerning the Model 600 was relevant to the issues of: 1) notice, 2) feasibility of warning, and 3) establishing that when the Model 600s were returned upon recall and retrofitted with a new fire control, the bolt lock was not removed. We disagree, because in order to be relevant to these issues the incidents involving the Model 600 must have occurred under circumstances substantially similar to the discharge of the Lewy Model 700.

■ Although trial judges are granted wide discretion in determining the relevancy and admissibility of evidence, *Roth*, 737 F.2d at 783, we believe the trial court abused its discretion in allowing the evidence concerning the Model 600. The standard by which we review the Model 600 evidence is the same standard just discussed with respect to the Model 700. In order to allow the evidence concerning the Model 600 it is necessary to find that the Model 600 and Model 700 fire control mechanisms are substantially similar in design and manufacture. In contrast to the foundation laid concerning the Model 700 evidence, the Lewys failed to lay an adequate foundation for the Model 600 evidence.

The evidence before the trial court showed that the dimensions of the M700 and M600 fire controls were different and thus affected the operation of the two fire controls. In this regard it is significant that Lewy's counsel at oral argument noted that the operation of the M700 fire control could be affected by a change in the tolerances as small as the width of a human hair. Thus, the M600 fire control, with component parts of different shape and dimension than those of the M700, cannot be said to be substantially similar to the M700. In addition, it is significant that when the Model 600 was recalled Remington took out the Model 600 fire controls and "put in ones that more resembled the Model 700 fire controls." Tr. Vol. 10 at 163. This fact was also noted by Lewy's counsel at oral argument.

This suggests that the M700 and M600 fire controls were not substantially similar. It would not make sense for a manufacturer to recall a product because of an alleged design defect and attempt to correct the problem by replacing the defective components with substantially similar components which suffer from the same defect as the original components.

For all of the reasons just discussed we do not believe that the Lewys have met their burden of showing substantial similarity in the M600 and M700 fire controls. Therefore the district court should not have admitted the M600 evidence.

The relevancy of evidence is a question of law which should be decided by the judge. However, it appears from the record that this important function was submitted to the jury. The district court expressed serious doubts about the relevancy of the Model 600 evidence and at the conclusion of the trial commented that he wished he would not have allowed the evidence in. The trial court felt that the jury should be allowed to decide the weight to be given to the Model 600 evidence.

In deciding on the admissibility of evidence concerning similar occurrences the trial court must satisfy itself that a proper foundation exists for the evidence to be received by the court. There is no question that it is the jury's role to weigh the evidence, but it is the judge's obligation to determine whether it gets on the scale.

When this case is retried, the evidence concerning the Model 600 should not be admitted.

### D. Evidentiary Rulings, Attorney Misconduct, Bias of the District Judge and Improper Jury Instructions

The final argument Remington raises is that the district court should have granted their motion for a new trial because the cumulative effect of erroneous evidentiary rulings, attorney misconduct, judicial bias, and an improper jury instruction deprived them of a fair trial.

Remington argues that the trial court erred in refusing to allow one of their witnesses, John Linde, to testify with regard to any opinions or conclusions he reached in his evaluation of the Model 700

during his employment with Remington. The Lewys respond by arguing that Linde was not properly identified by Remington as an expert witness until the Friday before trial. The district court's ruling on the Lewy's motion *in limine* limited Linde's testimony to that of a lay witness and during trial the court prevented Linde from giving any opinion testimony.

It is not necessary for the court to decide this issue in view of our disposition of the case. On remand Remington will be able to properly identify its expert witnesses in sufficient time to prevent unnecessary surprise or prejudice to the Lewys.

Remington next argues that they were prejudiced by the misconduct of opposing counsel. Remington cites instances of inappropriate remarks made by counsel for the Lewys in the presence of the jury and argues that counsel mislead the trial court as to pertinent facts in order to receive favorable evidentiary rulings. Again, because of our disposition of the case it is not necessary to decide whether the conduct of appellee's counsel was inappropriate. However, because this case is remanded for a new trial, counsel will be well advised to consider the allegations and arguments made by Remington in their brief.

Remington next argues that the trial court was biased against them. This bias, Remington argues, was evident from the comments of the trial court—both in chambers and in the presence of the jury, in questions asked of witnesses, and in interrupting Remington's counsel.

The "behavior and bearing of a judge during a jury trial must be such that the entire trial will be conducted in a general atmosphere of impartiality." *United States v. Cassiagnol,* 420 F.2d 868, 878 (4th Cir.), *cert. denied,* 397 U.S. 1044, 90 S.Ct. 1364, 25 L.Ed.2d 654 (1970). We have carefully read the record. The impression left in our mind, after reading the record, is that the trial court may have formed an opinion early on in the trial as to whether there was a defect in the Model 700, as any judge is bound to be affected by the evidence adduced in a strongly contested case. It seems evident that the trial court was

convinced that the Model 700 was defective and, while we might agree with the trial court's perception, this question is for the jury to decide. In addition, the trial judge, when admonishing the jury not to speak with others about the case, told the jury that he discussed the facts of the case with his wife and she immediately decided the case. We believe that these comments as well as others made in the presence of the jury may have conveyed the judge's perception of the case to the jury. We do, however, recognize that many of the court's comments were merely efforts to expedite what had become a very lengthy trial.

We recognize that federal judges have the right to comment on the evidence. As an earlier case, *McCoy v. Blakely,* 217 F.2d 227, 233 (8th Cir.1954), stated:

> The right to comment must be judiciously exercised and the jurors must be clearly advised that the province of determining the factual questions remains theirs. In *Buchanan v. United States,* 8 Cir., 1926, 15 F.2d 496, 498, this court stated clearly the permissible limitations in making such comments;

> "Under the rule, as stated and applied by the Supreme Court, it seems that, when a judge expresses his opinion as to the facts to the jury, making it clear that it is nothing but his opinion, and not binding upon them in any way, and that it is their duty and responsibility to determine all of the facts, he is within his rights, and that he is only subject to reversal when his comments upon the evidence or opinions as to the facts amount to partisan argument or advocacy, or constitute an appeal to passion or prejudice."

Again, as noted in *Kansas City Star Co. v. United States,* 240 F.2d 643, 664 (8th Cir.), *cert. denied,* 354 U.S. 923, 77 S.Ct. 1381, 1 L.Ed.2d 1438 (1957): "A federal judge has a right to fairly comment upon the evidence and even to express his opinion thereon, provided he makes clear that the ultimate fact determinations are for the jurors." (Citations omitted). A later case, *Champeau v. Fruehauf Corp.,* 814 F.2d

1271, 1275 (8th Cir.1987), views the trial court's role as follows:

> A trial judge should never assume the role of advocate, and must preserve an attitude of impartiality in the conduct of a trial. It is also true, however, that a trial judge may question witnesses or comment on the evidence. A federal judge is more than a 'mere moderator' or umpire in the proceedings and he may take an active role in conducting the trial and developing the evidence.

(quoting *Warner v. Transamerica Insurance Co.,* 739 F.2d 1347, 1351 (8th Cir.1984) (citations omitted)).

It does appear that the practice of allowing comments on the evidence by a trial judge is at considerable variance with the concept that the judge should retain and present an air of impartiality, particularly in jury trials where the jurors are the fact finders. Thus the trial court is often in the difficult position of needing to clarify the evidence while still maintaining an air of impartiality. This feat requires the judge to operate within a restricted range; but, obviously the judge must be accorded a fair measure of discretion in harmonizing the concepts of opinion comment with that of impartiality. Over the past decade or two and at the present time the trial courts are exercising more restraints in making comments on the evidence in order to present an air of impartiality over the proceedings. We believe this change in perspective is salutary and as noted in *Hale I,* 756 F.2d at 1331: "We further note that judicial restraint and decorum would be better served and advanced if district judges would refrain from making such comments. Courts must not only be fair and impartial in proceedings before them but must also avoid those actions which appear to be partial and unfair." We, however, recognize that there may well be situations where a judicial comment is necessary and proper.

▇ Remington also argues that the judge's questioning of the witnesses indicated his disfavor toward Remington's case. Federal Rule of Evidence 614(b) provides that "[t]he court may interrogate witnesses, whether called by itself or by a party." Fed.R.Evid. 614(b); *Hale I,* 756 F.2d at 1330. While we agree that the judge's questioning of witnesses could have reflected his view of the evidence to the jury, we do not believe that the judge assumed the role of advocate. This trial lasted four weeks and the trial transcript covers 21 volumes. The court's questioning of witnesses was not extensive and many of the questions were properly asked to clarify factual issues. *Jaeger v. Henningson, Durham & Richardson, Inc.,* 714 F.2d 773, 777 (8th Cir.1983).

The final error asserted by Remington refers to the propriety of a general instruction given to the jury. The instruction, taken from Devitt and Blackmar's *Federal Jury Practice and Instructions,* reads as follows:

> If a party fails to produce evidence which is under his control and reasonably available to him and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and did not.

E. Devitt, C. Blackmar & M. Wolff, 3 *Federal Jury Practice and Instructions* § 72.16 (4th ed. 1987).

This instruction was requested by the Lewys because Remington was unable to produce several documents that were destroyed pursuant to Remington's "record retention policy." Remington argues that destroying records pursuant to routine procedures does not provide an inference adverse to the party that destroyed the documents. *Smith v. Uniroyal, Inc.,* 420 F.2d 438, 442–43 (7th Cir.1970).

The record reflects that Remington had its record retention policy in place as early as 1970. In addition, the records that have been destroyed pursuant to the policy—complaints and gun examination reports—were kept for a period of three years and if no action regarding a particular record was taken in that period it was destroyed. *Vick v. Texas Employment Commission,* 514 F.2d 734, 737 (5th Cir.1975) (records destroyed pursuant to regulations governing inactive records).

■ We are unable to decide, based on the record we have before us, whether it was error for the trial court to give this instruction. On remand, if the trial court is called upon to again instruct the jury regarding failure to produce evidence, the court should consider the following factors before deciding whether to give the instruction to the jury. First, the court should determine whether Remington's record retention policy is reasonable considering the facts and circumstances surrounding the relevant documents. For example, the court should determine whether a three year retention policy is reasonable given the particular document. A three year retention policy may be sufficient for documents such as appointment books or telephone messages, but inadequate for documents such as customer complaints. Second, in making this determination the court may also consider whether lawsuits concerning the complaint or related complaints have been filed, the frequency of such complaints, and the magnitude of the complaints.

Finally, the court should determine whether the document retention policy was instituted in bad faith. *Gumbs v. International Harvester, Inc.*, 718 F.2d 88, 96 (3rd Cir.1983) ("no unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for."); *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 53 (8th Cir.1977) ("We recognize, however, that the destruction of business records may be sufficient to raise an unfavorable inference."). In cases where a document retention policy is instituted in order to limit damaging evidence available to potential plaintiffs, it may be proper to give an instruction similar to the one requested by the Lewys. Similarly, even if the court finds the policy to be reasonable given the nature of the documents subject to the policy, the court may find that under the particular circumstances certain documents should have been retained notwithstanding the policy. For example, if the corporation knew or should have known that the documents would become material at some point in the future then such documents should have been preserved. Thus, a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy. *Gumbs*, 718 F.2d at 96 ("Such a presumption or inference arises, however, only when the spoilation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent.") (quoting 29 Am.Jur.2d *Evidence* § 177 (1967)).

Finally, we have some doubts as to whether the defective design of the Lewy rifle was the proximate cause of the injuries sustained by Mrs. Lewy. Liability cannot be placed on a manufacturer of a defective product without a showing that the defect was the proximate cause of the plaintiff's injury. *See Prosser and Keeton on Torts* § 102, at 710 (W. Keeton 5th ed. 1984). The undisputed facts reveal that Mike Lewy adjusted his rifle's trigger pull in apparent disregard of the owner's manual which warned against owner adjustments of the rifle. Remington's test of the rifle shows that in this altered condition the rifle would fire on release of safety nine out of thirteen trials. However, when returned to factory specifications the Lewy rifle did not FSR once in fifty trials.

Although we recognize that Missouri does not allow a defendant to submit a sole cause instruction, M.A.I. 1.03 (1981), this does not prevent a defendant from requesting such an instruction from a federal court sitting in diversity or from arguing to the jury that someone else was the sole cause of the accident. *Roth*, 737 F.2d at 784 ("While state law determines the substance of jury instructions in a diversity action, the granting or denying of such instructions is controlled by federal law."); *Cook v. Cox*, 478 S.W.2d 678, 682 (Mo.1972) (although M.A.I. 1.03 precludes a sole cause instruction, the defendant may still argue the sole cause defense to the jury and converse the plaintiff's instruction). Thus Remington may be entitled to a sole cause instruction presenting its theory of

the case to the jury, "if 'legally correct, supported by the evidence and brought to the court's attention in a timely request.'" *Roth*, 737 F.2d at 784 (quoting *Board of Water Works Trustees v. Alvord, Burdick & Howson, Inc.*, 706 F.2d 820, 823 (8th Cir.1983)). However, Remington was not able to effectively argue that Mike Lewy's adjustments to his M700 were the sole cause of the rifle's discharge. The district court made it very clear to Remington that it did not believe that Mike Lewy's adjustments to his rifle had anything to do with the lawsuit. Further, on several occasions the court prevented Remington from developing its sole cause argument. Any attempt by Remington to continue to develop this evidence would have been futile in light of the district court's rulings and comments.

We recognize that the Missouri Supreme Court has stated that "the plaintiff's contributory negligence is not at issue in a products liability case." *Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491, 493 (Mo. banc 1986). However, the court further stated "[t]he defendant may sometimes make use of the plaintiff's alleged carelessness in support of arguments that the product is not unreasonably dangerous, or that the alleged defects in a product did not cause the injury * * *" *Id.* On remand we believe that the trial court should not prevent Remington from developing this line of inquiry.

## III. CONCLUSION

To briefly summarize, we affirm the judgment of the district court holding that the Lewys presented a submissible case for punitive damages and that evidence of similar incidents involving other Model 700 rifles were admissible. We reverse the judgment of the district court admitting evidence of similar incidents involving the Model 600 rifle because an adequate foundation of substantial similarity was not laid. The remaining assignments of error need not be decided because we remand this case for a new trial.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

JOHN R. GIBSON, Circuit Judge, concurring and dissenting.

I concur in the court's opinion except for Part II A which holds punitive damages to be submissible. Certainly the evidence of knowledge was strong, but I am not satisfied that it demonstrates the complete indifference to or conscious disregard for the safety of others so as to establish the predicate for punitive damages. Accordingly, I respectfully dissent from Part II A of the opinion as I do not believe there is sufficient evidence to support an award of punitive damages.