# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 06-1560/2493

_____

Frances A. Ahlberg, Individually and &ast;
as Co-Administrator of the Estate of &ast;
Ralph A. Ahlberg; Michael Glenn, &ast;
Co-Administrator of the Estate of &ast;
Ralph A. Ahlberg, &ast;
&ast;
 Plaintiffs - Appellants, &ast;
&ast;
Estate of Ralph A. Ahlberg, Deceased, &ast;  Appeal from the United States
&ast;  District Court for the
 Plaintiff, &ast;  Southern District of Iowa.
&ast;
 v. &ast;
&ast;
Chrysler Corporation, a Delaware &ast;
corporation; DaimlerChrysler &ast;
Corporation, a Delaware corporation, &ast;
&ast;
 Defendants - Appellees. &ast;

_____

Submitted: November 17, 2006
Filed: March 28, 2007

_____

Before BYE, BOWMAN, and GRUENDER, Circuit Judges.

_____

BOWMAN, Circuit Judge.

  The plaintiffs sued defendant Chrysler Corporation for negligence, fraudulent concealment, strict products liability, and emotional distress. Following a seven-day

trial, the jury returned a verdict for Chrysler on all counts. On appeal, the plaintiffs challenge several rulings made by the magistrate judge.[1] We affirm.

## I.

Ralph Ahlberg was killed while attempting to stop his son's 1999 Dodge Ram truck from rolling down a driveway. Ralph's 28-month-old grandson had been left alone in the cab—with the key in the ignition and the engine running—and apparently shifted the truck from park into neutral or reverse. Ralph was unable to stop the truck and was fatally injured during his attempt. Ralph's wife, Frances, witnessed the accident.

Ralph's estate sued Chrysler, the manufacturer of the Ram, and requested compensatory and punitive damages. Frances also sued, requesting compensatory damages as a result of her emotional distress. The estate alleged that Chrysler was negligent in several respects: design; manufacture; inspection; testing; distribution; and failure to warn, both before and after the sale. The estate also alleged that the Ram was sold in an unreasonably dangerous condition and that Chrysler fraudulently concealed the Ram's dangerous defects from the public.

The crux of the plaintiffs' claims was that Chrysler did not equip the Ram with a brake-shift interlock (BSI) device, which requires the user of a vehicle to depress the brake pedal before shifting out of park. The purpose of a BSI device is to prevent unintended acceleration (e.g., when a user mistakenly depresses the gas pedal and shifts out of park). The plaintiffs argued that: Chrysler's failure to equip the Ram with a BSI device, either originally or through a retrofit program, was negligent or unreasonably dangerous; Chrysler breached its pre-sale duty to warn users of this

---

[1]The Honorable Thomas J. Shields, United States Magistrate Judge for the Southern District of Iowa, presiding with the consent of the parties.

defect; Chrysler breached its post-sale duty to warn users after receiving notice of similar accidents; and Chrysler fraudulently concealed this defect from the public. Following their loss at trial, the plaintiffs argue that several of the magistrate judge's evidentiary and discovery rulings constitute reversible error. The plaintiffs also challenge the award of costs in favor of Chrysler.

## II.

The plaintiffs first argue that the magistrate judge erred in excluding evidence of a retrofit program that Chrysler voluntarily conducted in 1996. In response to reports of unintended acceleration in Jeep Cherokees, Chrysler retrofitted Jeeps manufactured between 1988 and 1997 with BSI devices. The magistrate judge excluded evidence of the Jeep-retrofit program under both Rule 401 and Rule 403 of the Federal Rules of Evidence.

"Rulings on admissibility of evidence will not be reversed absent a clear and prejudicial abuse of discretion." Pittman v. Frazer, 129 F.3d 983, 989 (8th Cir. 1997). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The plaintiffs argue that the Jeep-retrofit evidence is relevant to prove that Chrysler (1) was negligent in failing to retrofit the Ram, (2) had notice of the Ram's defect, (3) concealed this defect, (4) could have feasibly installed a BSI device on the Ram, (5) was negligent in designing the Ram, (6) sold the Ram in an unreasonably dangerous condition, (7) failed to warn users of the dangerous condition before sales

of the Ram, and (8) failed to warn users of the dangerous condition after sales of the Ram. We hold that the magistrate judge did not abuse his discretion in excluding the Jeep-retrofit evidence.

The Jeep-retrofit evidence was irrelevant to prove that Chrysler's decision not to retrofit the Ram was negligent. There is no independent duty to retrofit under Iowa law. Burke v. Deere & Co., 6 F.3d 497, 509–10 (8th Cir. 1993), cert. denied, 510 U.S. 1115 (1994). Since no duty to retrofit exists, the plaintiffs cannot sustain a claim for breach of this duty. Cf. Anderson v. Nissan Motor Co., 139 F.3d 599, 602–03 (8th Cir. 1998) (affirming exclusion of post-sale evidence where no post-sale duties to retrofit or warn existed under Nebraska law). The Jeep-retrofit evidence was also irrelevant to prove feasibility, as Chrysler conceded that it was feasible to install a BSI device on the Ram; thus, feasibility was not an issue at trial. See Burke, 6 F.3d at 506 (stating that where defendant stipulated the feasibility of design changes, evidence would not be properly admitted to prove feasibility); see also Anderson, 139 F.3d at 602–03 (same).

The Jeep-retrofit evidence was properly excluded under Rule 403 when offered to prove that Chrysler had a pre- or post-sale duty to warn, that the Ram's design was defective under negligence or strict-liability principles, or that Chrysler had notice of any defect. It is true that in Iowa both a pre- and a post-sale duty to warn have been recognized as separate negligence theories of recovery. Lovick v. Wil-Rich, 588 N.W.2d 688, 693–94 (Iowa 1999). Also, defective design may support recovery in a negligence or strict-liability action. Id. at 698–99. Additionally, evidence that a seller is on notice of a defect may be offered to prove that the seller breached its duty to warn. See, e.g., id. at 694 (quoting Restatement (Third) of Torts: Products Liability § 10 (1998)). In these circumstances, however, the probative value of the Jeep-retrofit evidence was substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury.

Bizzle v. McKesson Corp., 961 F.2d 719 (8th Cir. 1992), is instructive. In Bizzle, the plaintiffs sued the manufacturer of a cane under strict-liability, negligence, and breach-of-warranty theories. 961 F.2d at 720–21. The plaintiffs attempted to introduce evidence of the recall of a cane model, but this evidence was excluded by the district court. Id. at 721. This Court affirmed, holding that "[t]he recall's minimal probative value was easily outweighed by the dangers of unfair prejudice . . . and of misleading the jury" because the cane subject to the recall may not have been the same model as the one involved in the accident. Id. The same problem exists in this case—evidence of the *Jeep*-retrofit program raised substantial issues of confusion and prejudice with regard to the *Dodge Ram.* Given that the Jeep-retrofit evidence involved an entirely different vehicle, its probative value for the negligence and strict-liability claims was minimal. We further note that the plaintiffs' argument that the Jeep-retrofit evidence was relevant to prove notice is merely a restatement of their negligent-failure-to-warn claim—i.e., Chrysler's notice of a Jeep defect triggered a duty to warn users about an alleged Ram defect. Accordingly, we reject the plaintiffs' notice argument as well.

This case is distinguishable from both Lovick and Burke. In Lovick, the plaintiff brought claims of negligent failure to warn (post-sale) and strict liability for defective design. 588 N.W.2d at 692. The trial court admitted evidence of the defendant's competitor's retrofit program. Id. at 696. The Supreme Court of Iowa held that the trial court did not abuse its discretion, but narrowly circumscribed this holding, stating, "On retrial, however, we caution the trial court regarding undue emphasis of [the competitor's] retrofit program in light of its limited probative value and its potential for unfair prejudice." Id. at 697. While Lovick expressed reservations about the admission of retrofit evidence with such a tenuous connection to the product at issue, it ultimately deferred to the trial court under the abuse-of-discretion standard of review. Conversely, in this case, we are wholly confident that the trial court acted well within its considerable discretion in rejecting the plaintiffs' evidence.

-5-

In Burke, this Court affirmed admission of retrofit evidence to prove the existence of a defect where the combine at issue was identical to the combine involved in the retrofit. 6 F.3d at 506. In this case, however, the plaintiffs offered retrofit evidence for Jeeps, not Dodge Rams; therefore, the evidence was properly excluded under Rule 403.

Although the plaintiffs assert in a heading of their brief that the Jeep-retrofit evidence was relevant to their concealment claim, they fail to further elaborate on this point. We cannot discern how this evidence would be relevant to the concealment claim and further note that points not meaningfully argued in an opening brief are waived. See Chay-Velasquez v. Ashcroft, 367 F.3d 751, 756 (8th Cir. 2004); Kattelman v. Madden, 88 F.2d 858, 863 (8th Cir. 1937). Accordingly, we see no error in the exclusion of the Jeep-retrofit evidence.

III.

The plaintiffs next argue that the magistrate judge erred by not allowing Paul Sheridan to testify as an expert. Sheridan is a former Chrysler employee who chaired a minivan safety-leadership team (SLT) beginning in 1992. The SLT's purpose was to identify Chrysler's strengths and weaknesses in minivan safety. The SLT did not consider whether the Dodge Ram should be equipped with a BSI device. In 1994, the SLT was disbanded and Sheridan was discharged from his employment with Chrysler.

Sheridan described himself as an engineer, despite the fact that he did not have a degree in engineering, because he had "dealt with engineers . . . managed engineers . . . [and] been involved with technical issues" throughout his life. Trial Tr. at 377. Sheridan defined his "expertise" as "the management of safety issues at Chrysler." Id. at 582. According to the plaintiffs, Sheridan also "retrofit[ted] Chrysler vehicles with brake-shift interlock devices by making up the parts by scratch himself from time to time in an effort to understand the device." Id. at 484. Based on these

"qualifications," the plaintiffs tendered Sheridan as an expert on the "narrow issue" of whether the Ram was unreasonably dangerous because it lacked a BSI device. Id. at 484, 492. In support of the tender, the plaintiffs argued, "The only real qualifications that an engineer needs to [testify that a vehicle is unreasonably dangerous] is to understand how the [BSI] device works in a general sense and what risk is posed by the product with or without it. This is not a complicated product." Id. at 486. After a Daubert hearing, the magistrate judge excluded Sheridan's testimony and also ruled that in any event Sheridan's testimony would be cumulative of another expert's testimony.

We review for abuse of discretion rulings concerning the admissibility of testimony that is offered as expert opinion. Hickerson v. Pride Mobility Prods. Corp., 470 F.3d 1252, 1256 (8th Cir. 2006). Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A trial judge must make a preliminary assessment of whether the proffered expert's methodology is both scientifically valid and applicable to the case. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592–93 (1993). Under Rule 702, as amplified by Daubert, factors bearing upon this determination include whether the expert's theory or technique (1) can be and has been tested, (2) has been subjected to peer review and publication, (3) has a known or potential rate of error, and (4) has gained general acceptance in the relevant community. Id. at 593–94. This "gatekeeping requirement" is to ensure that the proffered expert exercises the same "intellectual rigor" in the

courtroom as does an expert in the relevant field. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152 (1999).

We hold that the magistrate judge did not abuse his discretion in refusing to allow Sheridan to testify as an expert. The proffer of Sheridan's testimony was properly rejected because Sheridan employed no methodology whatsoever—reliable or otherwise. The plaintiffs attempt to satisfy the Rule 702 and <u>Daubert</u> criteria by arguing that Sheridan's techniques were subject to review by his Chrysler peers; that a BSI device was more than 99% reliable; and that Chrysler, as a whole, employed manufacturing and safety standards recognized in the auto industry. These arguments lack any substance. First, the plaintiffs have not actually described Sheridan's alleged techniques, nor have we identified any from the record. Second, even if we were to assume that Sheridan was a member of a specialized field, the relevant peer-review group would not be Sheridan's coworkers. If that proposition were true, any employee could arguably be considered an expert on account of the fact that he or she worked with others. Third, the plaintiffs' argument regarding error rate fails to address any methodology actually used by Sheridan. The plaintiffs' argument regarding general acceptance in the relevant community suffers from the same flaw. Sheridan's proffered opinion evidence therefore falls short of the requirements of Rule 702 and <u>Daubert</u>. <u>Cf.</u> <u>Watkins v. Telsmith, Inc.</u>, 121 F.3d 984, 991 (5th Cir. 1997) ("[I]t seems exactly backwards that experts who purport to rely on general engineering principles and practical experience might escape screening by the district court simply by stating that their conclusions were not reached by any particular method or technique."). Because we find no abuse of discretion in the trial court's exclusion of the Sheridan's proffered opinion testimony, we need not consider the court's alternative rationale that the testimony was cumulative.

## IV.

The plaintiffs next argue that the magistrate judge improperly excluded hearsay testimony offered by Sheridan as a fact witness. Sheridan would have testified that during a 1994 meeting, members of the SLT stated that vehicles manufactured without BSI devices were unreasonably dangerous and that Chrysler vehicles should have been equipped with BSI devices. The magistrate judge excluded the testimony under Rules 401 and 403 and because the plaintiffs had not laid a sufficient foundation of the declarants' qualifications. The plaintiffs argue that the statements (1) were relevant to prove concealment, (2) qualified as admissions by Chrysler agents, and (3) must be admitted according to the rule of completeness.

We review the exclusion of hearsay statements for a clear abuse of discretion. Tallarico v. Trans World Airlines, Inc., 881 F.2d 566, 572 (8th Cir. 1989). Federal Rule of Evidence 801(d)(2)(D) provides that a statement is not hearsay if, when offered against a party, the statement was made by the party's agent during the existence of the agency relationship and concerned a matter within the scope of the agency. Thus, to gain admission of a statement, the proffering party must show that the statement was within the declarant's scope of employment. Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1566 (11th Cir. 1991) (quoting White Indus., Inc. v. Cessna Aircraft Co., 611 F. Supp. 1049, 1064 (W.D. Mo. 1985)).

We hold that the magistrate judge did not abuse his discretion in sustaining the objection to Sheridan's hearsay testimony. The plaintiffs cannot show that the SLT members' statements were within the scope of their employment. The SLT's purpose was to evaluate minivan safety, not Ram safety. Cf. Tallarico, 881 F.2d at 572 (affirming the exclusion of hearsay statements made by employees who were not involved in the decision that formed the basis of the suit). Accordingly, the statement was properly excluded. We also note that the magistrate judge acted within his discretion in excluding the statements under Rule 403.

The plaintiffs' alternative argument that the statements should have been admitted under the rule of completeness is without merit. This argument is based on the fact that the magistrate judge allowed Sheridan to testify about his own statements made during the SLT meeting. The rule of completeness, however, applies to writings or recorded statements, not to conversations. See Fed. R. Evid. 106 and advisory committee's note. Moreover, the rule "permits nothing more than setting the context and clarifying the answers given on cross-examination." United States v. Ramos-Caraballo, 375 F.3d 797, 803 (8th Cir. 2004). Here, the plaintiffs are not attempting to provide clarity or context, but rather are attempting to admit hearsay statements consistent with Sheridan's own statements. Therefore, we see no abuse of discretion in the magistrate judge's exclusion of the hearsay statements.

V.

The plaintiffs' next argument is that the magistrate judge erred by excluding evidence of previous lawsuits and customer complaints concerning accidents involving Chrysler vehicles that lacked BSI devices. The magistrate judge excluded any evidence of a prior accident unless the accident involved (1) a Jeep or Dodge truck with an automatic transmission manufactured between 1990 and 1999, (2) with a key left in the ignition, and (3) a child under age four.[2] The plaintiffs contend that this standard was too restrictive and that the excluded accidents were relevant to show Chrysler's knowledge of a defect and its concealment thereof.

We review decisions concerning the admissibility of prior-accident evidence for a clear and prejudicial abuse of discretion. Drabik v. Stanley-Bostitch, Inc., 997 F.2d 496, 508 (8th Cir. 1993). A party may offer evidence of prior accidents to show notice, causation, feasibility of correction, or magnitude of danger *if* a showing of substantial similarity is made. Id.

---

[2]The magistrate judge also excluded the customer complaints as hearsay.

The plaintiffs contend that the magistrate judge's substantial-similarity standard was too narrow, but our previous cases belie this assertion. For example, in <u>Lovett v. Union Pacific Railroad</u>, 201 F.3d 1074 (8th Cir. 2000), this Court affirmed a stricter showing for admissibility of other-accident evidence than the one in this case. In <u>Lovett</u>, a train collided with a 1985 Jeep Cherokee at a railroad crossing. <u>Id.</u> at 1077. The district court required that evidence of other accidents (1) involve a 1985 Cherokee, (2) in a collision with a locomotive, (3) at a railroad crossing, (4) resulting in the Cherokee rolling over, (5) in a similar topographical area, (6) at similar speeds to satisfy the substantial-similarity requirement. <u>Id.</u> at 1080. Additionally, in <u>Lewy v. Remington Arms Co.</u>, 836 F.2d 1104 (8th Cir. 1988), this Court reversed the admission of prior accidents that did not involve the same model rifle as the model at issue. <u>Lewy</u> involved a Model 700 rifle, and while this Court affirmed the admission of accidents involving other Model 700 rifles, we reversed the admission of accidents involving Model 600 rifles because the models were not substantially similar. <u>Id.</u> at 1107–09.

The standard articulated by the magistrate judge in this case allowed the plaintiffs to introduce evidence of accidents involving vehicles (Jeeps) different from the vehicle involved in this case (Dodge Ram). Considering the more restrictive standards articulated in <u>Lovett</u> and <u>Lewy</u>, the magistrate judge did not abuse his discretion in fashioning the standard for prior-accident evidence in this case. And because the plaintiffs fail to show that the excluded evidence of other accidents satisfies that standard, the magistrate judge did not abuse his discretion in ruling the evidence inadmissible.[3]

---

[3]We acknowledge that the customer complaints could have been offered for a non-hearsay purpose—notice—but the accidents described in these complaints still must satisfy the substantial-similarity standard for admissibility. <u>See</u> <u>Lewy v. Remington Arms Co.</u>, 836 F.2d 1104, 1108 (8th Cir. 1988) (admitting reports that contained customer complaints of similar accidents upon a satisfactory showing of substantial similarity).

VI.

The plaintiffs next assert that three of the magistrate judge's discovery rulings deprived them of a fair trial. Our standard of review of discovery orders is "very narrow"—we will only reverse upon a showing of a "gross abuse of discretion resulting in fundamental unfairness in the trial of the case." Firefighters' Inst. For Racial Equality ex rel. Anderson v. City of St. Louis, 220 F.3d 898, 902 (8th Cir. 2000) (citations and quotations omitted), cert. denied, 532 U.S. 921 (2001). The plaintiffs have failed to explain how any of the magistrate judge's discovery orders were a gross abuse of discretion, and we fail to see a gross abuse of discretion in the magistrate judge's discovery management. Accordingly, we discern no deprivation of a fair trial.

VII.

The plaintiffs' opening brief also identifies two rulings that allegedly constitute reversible error—the magistrate judge's refusal to submit both Frances's bystander claim and the estate's punitive-damages claim to the jury. The plaintiffs have not meaningfully argued these points; therefore, they are waived. See Chay-Velasquez v. Ashcroft, 367 F.3d 751, 756 (8th Cir. 2004); Kattelman v. Madden, 88 F.2d 858, 863 (8th Cir. 1937).

VIII.

The plaintiffs' final challenge is to the District Court's award of costs in favor of Chrysler. After the District Court entered judgment, Chrysler filed a bill of costs requesting $17,351.86 in accordance with Federal Rule of Civil Procedure 54(d)(1).[4]

---

[4]Rule 54(d)(1) provides: "[C]osts other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . . Such costs may be taxed by the clerk on one day's notice. On motion served within 5 days

On May 31, 2006, the District Court clerk entered an order awarding Chrysler $11,882.64 in costs. The plaintiffs did not request review of the clerk's order in the District Court and instead filed a notice of appeal from that order on June 5, 2006. Afterwards, on June 16, 2006, the magistrate judge independently entered an order purporting to award Chrysler only $8,049.45 in costs.

We cannot review either costs order on appeal. Generally, "[t]he filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Liddell v. Bd. of Educ. of St. Louis, 73 F.3d 819, 822 (8th Cir. 1996) (quoting Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (per curiam)). Here, the magistrate judge did not have jurisdiction to enter the June 16 costs order because the June 5 notice of appeal from the May 31 costs order divested the District Court of its jurisdiction to enter another costs order. Thus, the June 16 order has no effect.

Additionally, the plaintiffs have waived their right to challenge the clerk's May 31 order because they did not first seek review of that order in the District Court. Several federal circuits have held that a party's failure to seek review by the district court of a clerk's costs order as permitted by Rule 54(d)(1) waives the right to appellate review of that order. See Bloomer v. UPS, Inc., 337 F.3d 1220, 1221 (10th Cir. 2003) (per curiam); Cooper v. Eagle River Mem'l Hosp., Inc., 270 F.3d 456, 464 (7th Cir. 2001); Walker v. California, 200 F.3d 624, 625–26 (9th Cir. 1999) (per curiam); Prince v. Poulos, 876 F.2d 30, 34 (5th Cir. 1989). We join these circuits in holding that a party's failure to seek review of a clerk's costs order in the district court constitutes a waiver of the right to challenge that order on appeal.[5] Because in the

_____

thereafter, the action of the clerk may be reviewed by the court."

[5]This case presents the first opportunity for our Court to squarely confront the Rule 54(d)(1) waiver issue. In one prior case, Richardson v. Commc'ns Workers of Am., 530 F.2d 126, 133 n.10 (8th Cir.), cert. denied, 429 U.S. 824 (1976), we declined

present case the plaintiffs did not seek review in the District Court of the clerk's order awarding costs, they have waived their right to appeal that order. Therefore, Chrysler is entitled to costs as provided in the clerk's order in the amount of $11,882.64.

IX.

For the reasons stated, the judgment of the District Court is affirmed.

_____

---

to consider a challenge to a clerk's award of costs where the appellant had not first sought review in the district court under Rule 54(d)(1). But in a later case, McDowell v. Safeway Stores, Inc., 758 F.2d 1293, 1294 (8th Cir. 1985) (per curiam), we reviewed and affirmed a clerk's award of costs despite the fact that the appellants had not first sought review in the district court. Neither Richardson nor McDowell squarely confronts the waiver issue, and McDowell does not mention Richardson. We think neither of these two cases commands our allegiance as the law of the circuit, but we now come down the same way that Richardson did.

-14-